Darren M. Richie (SBN 316116)
darren@dre.law
Marissa B. Hertzberg (SBN 340350)
marissa@dre.law
**DRE, A.P.C.**
222 N. Canon Drive, Suite 201
Los Angeles, CA 90210
(213) 265-7888

*Attorneys for Defendant Mark S. Ibrahim*

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARK S. IBRAHIM,<br><br>       Defendant. | CASE NO. 1:21-cr-00496-TJK-1<br><br>**DEFENDANT IBRAHIM'S MOTION TO DISMISS THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. Timothy J. Kelly<br><br>Date: March 3, 2022<br>Time: 2:00 PM |

### MOTION TO DISMISS THE INDICTMENT

Defendant, Mark S. Ibrahim ("Mr. Ibrahim"), moves this Court pursuant to the Federal Rules of Criminal Procedure Rules 12(b)(3)(A)(iv) and 12(b)(3)(B)(iii), for an order dismissing the Indictment in this matter.  As shown below, all four counts of the Indictment violate the First and Fifth Amendments of the United States Constitution and Rule 7(c)(1) of the Federal Rules of Criminal Procedure.

## ALL FOUR COUNTS MUST BE DISMISSED BASED ON THE FOLLOWING:

- Government's failure to equally protect Mr. Ibrahim under the Fifth Amendment of the United States Constitution.

- Government's failure to allege any conduct necessary to establish the element of scienter as required by statute under Title 18, United States Code, §1752(a) and (b)(1)(A); Title 40, United States Code §5104(d)) and 5104€(a)(A)(i); and Title 18, United States Code §1001(a)(2)).

- Government's politically motivated prosecution; there exists prosecutorial misconduct where the Government's motive in filing these charges was political.

- Mr. Ibrahim was entrapped as a matter of law.

## COUNTS 1 AND 3 MUST BE DISMISSED BASED ON THE FOLLOWING:

- 18 U.S. Code § 1752 is unconstitutional as it applies to Mr. Ibrahim; it directly infringes on his First Amendment rights and violates his rights under the Due Process Clause of the United States Constitution under the Fifth Amendment.

## COUNT 2 MUST BE DISMISSED BASED ON THE FOLLOWING:

- Mr. Ibrahim objectively acted based on a necessity, without the requisite knowledge and intent, which is required to properly indict Mr. Ibrahim for the above, alleged offense.

//

<u>**COUNT 4 MUST BE DISMISSED BASED ON THE FOLLOWING:**</u>

- The Government's failure to allege (1) that Mr. Ibrahim acted with the requisite intent to willfully or knowingly make a false statement and (2) that Mr. Ibrahim's statement was material, as required by 18 U.S.C. 1001(a)(2).

For each one of these reasons, it is respectfully submitted, the Indictment should be dismissed.

This Motion will be based on the attached Memorandum of Points and Authorities, supporting declaration(s) and exhibit(s), on the pleadings, papers, records, and files in this action, and on such oral and documentary evidence as may be presented at the hearing on this motion.

Dated: January 28, 2022

Respectfully Submitted,

**DRE LAW, A.P.C.**

By:   */s/Darren M. Richie*
      Darren M. Richie
      Marissa B. Hertzberg
      *Attorneys for Defendant*
      MARK S. IBRAHIM

## **TABLE OF CONTENTS**

I.   BACKGROUND ................................................................................................ 8

II.  STATEMENT OF THE CASE ..................................................................... 11

III. LEGAL ARGUMENT .................................................................................. 13

   A.  The Motion to Dismiss the Indictment Should be Granted Upon the Basis of Selective Prosecution in Violation of the Fifth Amendment Equal Protection Clause. ................................................................................................ 13

   B.  The Motion to Dismiss Counts One and Three of the Indictment Should be Granted Where the Government Engaged in Vindictive Prosecution. .................................. 17

   C.  If this Court is Inclined to Find There was not a Selective Prosecution, Mr. Ibrahim Requests the Opportunity to Obtain Discovery in Support of his Selective Prosecution Claim. ................................................................................................ 20

   D.  Count Four of the Indictment Should be Dismissed Where the Government has Presented no Evidence to Support the Charge. ................................................ 21

      1.  Mr. Ibrahim did not possess the requisite intent to knowingly and willingly make a false, fictitious, or fraudulent statement. ............................................... 22

      2.  Mr. Ibrahim's answer to Special Agent Higley's question was not a material representation, as required under 18 U.S.C. § 1001(a)(2). .................................. 26

   E.  This Court Should Dismiss Count Two Where Mr. Ibrahim Acted Based Upon the Necessity Exception. ................................................................................................ 28

   F.  The Motion to Dismiss Should be Granted Where the Government has Violated Mr. Ibrahim's Freedom of Speech Under the First Amendment of the United States Constitution. ................................................................................................ 30

   G.  The Indictment Must be Dismissed Because Mr. Ibrahim was Unlawfully Entrapped as a Matter of Law. ................................................................................................ 31

      1.  Mr. Ibrahim was induced by the Government. .................................................. 31

2. Mr. Ibrahim was not Predisposed..........................................................................32

IV. CONCLUSION ...............................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)....................................................................29

*Kungys v. United States*, 485 U.S. 759 (1988)................................................................26

*Mathews v. United States*, 485 U.S. 58 (1988) ..............................................................30

*Oyler v. Boles*, 368 U.S. 448 (1962)...............................................................................12

*People v. Rodgers*, 92 Ill. 2d 423 (1982) .......................................................................20

*Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142 (9th Cir. 2007)...........13

*United States v. Meyer,* 810 F.2d 1242 (D.C. Cir. 1987) ...............................................16

*United States v. Armstrong*, 517 U.S. 456 (1996)................................................16, 19, 20

*United States v. Bailey*, 444 US 394 (1980) ...................................................................27

*United States* v. *Berrios*, 501 F.2d 1207 (2d Cir. 1974)..................................................20

*United States v. Brown*, 43 F.3d 618 (11th Cir. 1995)....................................................30

*United States v. Brown*, 925 F.2d 1301 (10th Cir. 1991) ...............................................23

*United States v. Carter*, 270 F.3d 731 (8th Cir. 2001).....................................................23

*United States v. Coia*, 719 F.2d 1120 (11th Cir. 1983)....................................................22

*United States v. Dorrell,* 758 F.2d 427 (9th Cir. 1985)....................................................27

*United States v. Falcon*, 347 F.3d 1000 (7th Cir. 2003) .................................................17

*United States v. Gaudin*, 515 U.S. 506 (1995).................................................................26

*United States v. Jamison*, 505 F.2d 407 (D.C. Cir. 1974)...............................................17

*United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987)................................................12

*United States v. Lange*, 528, F.2d 1280 (5th Cir. 1976)....................................................21

*United States v. Lewis*, 628 F.2d 1276 (10th Cir. 1980) ..................................................27

*United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015)......................................................26

*United States v. Mcbane*, 433 F.3d 344 (3d Cir. 2005)....................................................26

*United States v. Pittman*, 642 F.3d 583 (7th Cir. 2011) ..................................................18

*United States v. Polychron*, 841, F.2d 833 (8th Cir. 1988) .............................................22

*United States v. Schoon*, 971 F.2d 193 (9th Cir. 1992)....................................................28

*United States v. Waechter*, 771 F.2d 974 (6th Cir. 1985) ...............................................24

*United States v. Weatherspoon*, 581 F.2d 595 (7th Cir. 1978)........................................21

*Wayte v. United States*, 470 U.S. 598 (1985)...................................................................15

*Williams v. United States,* 458 U.S. 279 (1982) .............................................................24

**Statutes**

18, United States Code Section 1001(a)(2)) ...............................................................12, 18

Title 18, United States Code, Section 1752(a)(1) and (b)(1)(A)).....................................11

Title 40, United States Code, Section 5104(d)) ...............................................................11

Title 40, United States Code, Section 5104(e)(1)(A)(i) ...................................................12

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

## I.  BACKGROUND

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol ("the Capitol"), which is located at First Street, SE, in Washington D.C.  The joint session began at approximately 1:00 p.m., and shortly thereafter, a large crowd gathered outside the U.S. Capitol.  At approximately 2:00 p.m., certain individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and assaulting members of law enforcement.  Mr. Ibrahim was not one of these individuals. He never entered the United States Capitol.  He never committed any threats of violence, nor did he engage in any acts of violence or any incitement thereof.  In fact, as a Federal Agent and Veteran, Mr. Ibrahim was ready to defend the United States Capitol if necessary and offered to do so to the FBI (Washington Field office) WFO swat team. On January 6, 2021, Mr. Ibrahim was employed as a Special Agent for the Drug Enforcement Administration, but he was not on official duty that day.

Mr. Ibrahim is from the Washington D.C. area. On January 6, 2021, Mr. Ibrahim traveled to Washington D.C. to attend the rally at the request of Jorge Calzadilla, an Individual whom as provided information to the FBI in the past and was asked by an FBI agent to collect information that Day, to witness a historic American event.  Mr. Ibrahim had a flight back to California from Virginia scheduled for January 5, 2021.  However, when Mr. Ibrahim and his mother drove to the airport for his flight on January 5, 2021,

Mr. Ibrahim decided not to leave, at the behest of Mr. Calzadilla, who strongly pressured him to stay and accompany him to the rally on January 6, 2021.  Mr. Ibrahim had a pre-existing trustful relationship with Mr. Calzadilla built over time and by virtue of their time in Iraq were Mr. Ibrahim was providing information to the FBI as well in regards to Islamic State of Iraq and the levant ISIS.

On January 6, 2021, Mr. Ibrahim traveled to the rally with Mr. Calzadilla, who has a history of working with the FBI previously; the FBI was not only aware of Mr. Calzadilla's presence at the rally, but interested in what would result from it and was asked to collect information by an FBI Agent. At the rally, Mr. Ibrahim met up with his brother, Michael S. Ibrahim, an FBI agent who was also off duty.  Mr. Ibrahim and his brother, both Government Agents, had their guns and badges with them. They both carried their guns and badges on their person because they were encouraged to do so at all times by their employers, whether on or off duty.

Other FBI agents were present at the rally as well; namely Special Agent Levi Thomas ("Special Agent Thomas"), who was on official duty assigned to the FBI WFO SWAT team.  Mr. Ibrahim also approached Special Agent Thomas at the rally with his brother, Michael Ibrahim, and both federal agents offered their assistance if it became necessary. Mr. Ibrahim was never informed by Michael Ibrahim, Special Agent Thomas, or any law enforcement officer that he was in violation of the law. While employed as Federal Agents, both Ibrahim brothers believed that their actions at the rally on January 6,

2021 were legal and they were never told by FBI officials on duty that day that they were doing anything illegal.

At approximately 1:09 p.m., and again at 2:03 p.m., Mr. Calzadilla took several private photographs of Mr. Ibrahim, in which Mr. Ibrahim's back was to the crowd at the rally. Mr. Ibrahim's badge and firearm are slightly visible in the aforementioned photographs.

As the rally progressed throughout the afternoon, Mr. Ibrahim noticed the crowd becoming increasingly agitated and disorderly. Amidst the chaos of the riot, Mr. Ibrahim sought and found refuge on a statute, out of necessity, so that he could clearly see what was happening, and to gather his bearings and provide security for himself and others. At approximately 3:29 p.m., Mr. Ibrahim stepped down from the safety of his perch and Mr. Calzadilla took multiple photos of Mr. Ibrahim. In each of these photographs, Mr. Ibrahim had his back to the crowd, and his DEA badge and firearm are slightly visible. The photograph was intended to be private, as can be seen by the juxtaposition of Mr. Ibrahim and the crowd behind him.

Throughout the chaos of the rally on January 6, 2021, Mr. Ibrahim never took down any barricades or entered any Capitol building. He stood in the vicinity of the FBI WFO SWAT team, and was never told by any law enforcement officers to leave. Mr. Ibrahim was never told that he was breaking any laws while he attended the rally.

//

The events at the Capital on January 6, 2021, have been subject to a robust investigation and prosecution conducted by the Department of Justice, including the Office of the Inspector General, the Federal Bureau of Investigation, and the United States Attorney's Office for the District of Columbia.

On or about March 15, 2021, Mr. Ibrahim was interviewed about his presence at the rally on January 6, 2021, by Special Agent Jason Higley with the Department of Justice, OIG.  During the interview, Mr. Ibrahim was asked by Special Agent Higley, what type of Protective Equipment he had with him that day.  Mr. Higley asked, "what, sort of, let's call it protective equipment did you bring with you?  You bring your DEA creds?" (Tr., 12). Mr. Ibrahim replied by stating, "I did.  I had my creds.  I had my firearm, and my badge on me.  But never exposed.  Not that I know of."(Tr, 12-13).  Mr. Ibrahim never lied about his badge and gun being present on his person at the rally, as he honestly answered that he carried his credentials as a Federal Agent with him on January 6, 2021. Further, Mr. Ibrahim gave the prequalifier statement to his recollection: "Not that I know of" and relied on photographic evidence to refresh his recollection of the events.  Mr. Ibrahim volunteered this information and was not asked whether his firearm or badge were exposed.

## II.   STATEMENT OF THE CASE

The four-count indictment alleges that on January 6, 2021, within the District of Columbia, Mr. Ibrahim:

COUNT ONE: "did **knowingly** enter and remain in or on restricted grounds, that is, any posted, cordoned off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so and did during and in relation to the offense, use and carry a deadly and dangerous weapon and firearm", in violation of Title 18, United States Code, Section 1752(a)(1) and (b)(1)(A)).

COUNT TWO: "did step or climb on, a statute, seat, wall, fountain, or other erection or architectural feature in the Grounds of the Capitol," in violation of Title 40, United States Code, Section 5104(d)).

COUNT THREE: "did carry on and have readily accessible on the Grounds of the Capitol a firearm and a dangerous weapon," in violation of Title 40, United States Code, Section 5104(e)(1)(A)(i).

COUNT FOUR: " did willfully and knowingly make **materially** false, fictious, and fraudulent statements and representations in a criminal matter in the District of Columbia within the jurisdiction of the executive branch of the Government of the United States, by stating to a Special Agent of the Office of the Inspector General that he did not knowingly expose his firearm and DEA badge on the Grounds of the United States Capitol Building on January 6, 2021, in the District of Columbia," in violation of Title 18, United States Code Section 1001(a)(2)).

//

## III.   LEGAL ARGUMENT

### A. The Motion to Dismiss the Indictment Should be Granted Upon the Basis of Selective Prosecution in Violation of the Fifth Amendment Equal Protection Clause.

Mr. Ibrahim contends that the process by which his case was selected for prosecution denied him equal protection of the law as guaranteed by the Fifth Amendment to the United States Constitution.  As grounds for this contention, Mr. Ibrahim asserts that the selection of his case for criminal prosecution was deliberately based upon an arbitrary and unjustifiable standard.

While it is acknowledged that the conscious exercise of some selectivity in prosecution is not in itself a constitutional violation, selective prosecution based upon an unjustifiable standard is unconstitutional.  *See Oyler v. Boles*, 368 U.S. 448, 457 (1962). Constitutional sufficiency does not merely require that the allegations of an indictment be detailed enough to provide for a mounting defense; it also safeguards the due process protection that a grand jury affords as a check on an overzealous prosecutor.  A grand jury may not give a prosecutor a blank check.  *See United States v. Kilpatrick*, 821 F.2d 1456, 1464-65 (10th Cir. 1987).  Here, the Government's decision to first investigate and subsequently prosecute Mr. Ibrahim's case was not the result of random selection, nor was it the result of a justifiable procedure. Instead, his Indictment was based on politically motivated prosecution.

As such, Mr. Ibrahim seeks dismissal of the indictment asserting selective enforcement or prosecution. "A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). "To prevail on its claim under the equal protection clause, [the challenger] must demonstrate that enforcement had a discriminatory effect" and that the government was motivated by a discriminatory purpose. *Id*. In order to establish a discriminatory effect, "the claimant must show that similarly situated individuals…were not prosecuted." *Id*. at 1153.

First, with regard to the discriminatory effect element, in this case, there are various comparators who were not prosecuted, or even negatively impacted by their analogous actions to Mr. Ibrahim's. For example, a United States Customs and Border Protection officer was never prosecuted by the Government for his involvement in the events of January 6, 2021, despite carrying a firearm during the "Justice for J6" rally at the Capitol. Mr. Ibrahim has been indicted on allegations of the same conduct, while this Agent has been spared. It was stated that this unnamed individual indeed was carrying a firearm, and he was not at the rally in any official capacity. The article was published by the Associated Press on September 20, 2021 and is attached as **Exhibit A.** Applying the law to the facts at hand, Defendant's indictment must be dismissed, as this comparator Customs and Border Protection Officer is a prime example of the selective prosecution utilized by the United States.

Counts One, Two, Three, and Four of the Indictment violate Mr. Ibrahim's equal protection rights under the Fifth Amendment because they impose criminal charges on Mr. Ibrahim, and not others similarly situated to him.  Specifically, dismissal of the entire Indictment is necessary to carry out justice, because of the fact that similar conduct has gone uncharged.  As another comparator, Mr. Ibrahim's brother attended the rally on January 6, 2021 as an off-duty FBI agent, and like Mr. Ibrahim, carried his badge and gun on his person.  Yet, Michael S. Ibrahim is still a special agent with the FBI and an employee in good standing with the Department of Justice to this day. Unlike Mr. Ibrahim, Michael S. Ibrahim has not been indicted—and was never offered immunity—despite engaging in the same conduct as Mr. Ibrahim in the exact same location. Additionally, there were other off duty Federal Agents present at the Capitol on January 6, 2021, who have not been indicted or charged.

Further, Mr. Ibrahim's brother, Michael Ibrahim, has given a sworn statement and testified under oath that he was off duty on January 6, 2021, when he attended the rally with his brother. Michael Ibrahim was in possession of his official badge, credentials, handcuffs and was armed with his FBI-issued weapon.  Michael Ibrahim walked with Mr. Ibrahim and Mr. Calzadilla around the Capitol for several hours; Michael Ibrahim and Mr. Calzadilla walked together in lock step with Mr. Ibrahim. However, as of current, Michael Ibrahim has not been removed from, or disciplined by the FBI. Even though both brothers engaged in identical conduct on January 6, 2021,

Mr. Ibrahim stands as the only armed, off-duty law enforcement officer charged with felony offenses, raising a legitimate and colorable claim of discriminatory prosecution.

Second, with regard to the element of discriminatory purpose, as described in more detail below, the Government was motivated to indict Mr. Ibrahim pursuant to a discriminatory purpose, *i.e.*, vindictive prosecution based upon political motives. According to *Wayte v. United States*, "[i]t is appropriate to judge selective prosecution claims according to ordinary equal protection standards." *Wayte*, 470 U.S. 598, 608 (1985).

Therefore, Mr. Ibrahim respectfully requests that this Court grant his motion to dismiss the entire Indictment based upon an unconstitutional selective prosecution by the Government in violation of the Fifth Amendment of the United States Constitution.

On information and belief, Mr. Ibrahim, his brother Michael Ibrahim, Agent Levi Thomas, the FBI WFO SWAT Team and Jorge Calzadilla, an FBI Informant, were not the only Federal Agents and sources of information at the rally. The Defense intends to ascertain who was assigned to attend, by whom, when, and why. The Defense plans to find out whether they were in plain clothes, badged and armed and whether they were given specific orders. The Defense intends to understand what the DOJ investigation, one of the largest ever in the history of the United States, has revealed in terms of how many agents attended even if they were not specifically ordered to attend and whether any agents have provided information to DOJ resulting from their presence at the rally.

The Supreme Court has held that if the defendant shows "a colorable basis," or "reasonable likelihood" of selective prosecution, then the prosecution must turn over all discovery corroborating or refusing the claim that similarly situated individuals were not charged." *United States v. Armstrong,* 517 U.S. 456, 468 (1996). As such, Mr. Ibrahim intends to respectfully request that the Court order discovery to support his selective prosecution claim, in order to ascertain how many Federal Agents, on or off duty, were present at the rally on January 6, 2021.

**B. The Motion to Dismiss Counts One and Three of the Indictment Should be Granted Where the Government Engaged in Vindictive Prosecution.**

The United States' decision to indict Mr. Ibrahim for the crime of Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count One), and Carrying on the Capitol, a firearm, (Count Three) are textbook cases of vindictive prosecution and thus a violation of Ibrahim's constitutional right to due process of law.  Under D.C. Circuit law, analysis of a vindictive prosecution claim requires (1) determining whether "all of the circumstances" of an increase in charge, "taken together, support a reasonable likelihood of vindictiveness and therefore give rise to a presumption" of vindictiveness, *United States v.  Meyer,* 810 F.2d 1242, 1246 (D.C. Cir. 1987); and (2) if so, whether the Government has set forth reasons on the record "justifying its harsher treatment of the defendant in a way which negates the possibility of vindictiveness." *United States v. Jamison*, 505 F.2d 407, 416 (D.C. Cir. 1974).

First, the circumstances of the felony charges in this matter support a reasonable likelihood of vindictiveness. In this case, Mr. Ibrahim did not go over any barricades, and there were no signs that said "No Trespassing."  He was within speaking distance of multiple law enforcement officers, the Capitol Police, and other Agencies, including ATF's SWAT.  In fact, Mr. Ibrahim offered assistance to law enforcement that knew he was a Federal Agent and none of those officers informed him he was doing anything illegal.  Additionally, Mr. Ibrahim was with other off-duty Federal Agents.  They were not told to leave, and if they had been, Defendant Ibrahim would have left.  Mr. Ibrahim has never broken the law in his past, on January 6th, 2021, or thereafter.  He was not **knowingly** in a restricted area.  The Government has failed to allege he was.  As such, the indictment must be dismissed.

Second, the Government has failed to set forth reasons on the record to justify these felony charges against Mr. Ibrahim, while similarly situated off-duty agents who attended the rally on January 6, 2021, have never been charged.   A pretrial claim of vindictive prosecution requires the defendant to "show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus." *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003).   Mr. Ibrahim contends that the prosecutorial conduct at issue here was motivated by prosecutorial animus. A defendant asserting a claim for vindictive prosecution needs to indicate that "he would not have been prosecuted but for the government's animus." *United States v.*

*Pittman*, 642 F.3d 583, 586 (7th Cir. 2011). In this case, Mr. Ibrahim's situation objectively evidences prosecutorial vindictiveness because the government was motivated by prosecutorial animus.  Mr. Ibrahim was not Indicted until he was interviewed by Tucker Carlson, a well-known Republican news outlet.  This occurred over six months after the January 6, 2021 rally.

The Government was opined that Defendant Ibrahim supported President Donald J. Trump.  He was targeted for that belief.  On information and belief, the Government knew that Defendant Ibrahim had filed a grievance for his wrongful termination from the DEA, only one day after his return from Washington D.C. on January 7, 2021, and this vindictiveness manifested through a retaliatory Indictment being filed. Furthermore, Mr. Ibrahim's right to freedom of speech was violated, as he was fired following his public appearance on Tucker Carlson.  He was vindictively prosecuted for exercising his freedom of speech. Therefore, Mr. Ibrahim would not have been prosecuted, but for the Government's animus and distaste of his political leanings.  As such, Mr. Ibrahim respectfully requests that this Court grant his motion to dismiss the entire Indictment based upon an unconstitutional vindictive prosecution by the Government in violation of the Fifth Amendment of the United States Constitution.

//

//

//

**C. If this Court is Inclined to Find There was not a Selective Prosecution, Mr. Ibrahim Requests the Opportunity to Obtain Discovery in Support of his Selective Prosecution Claim.**

Even if the Court were considering denying the Mr. Ibrahim's motion to dismiss on the grounds that this case is not a selective prosecution, Mr. Ibrahim respectfully requests the Court first allow Mr. Ibrahim the opportunity to order and obtain discovery to further support the selective prosecution claim prior to the Court making its determination. The Supreme Court has held that a defendant is entitled to obtain discovery in support of a selective prosecution claim when the defendant shows a "colorable basis" or "reasonable likelihood" of selective prosecution. *Armstrong*, 517 U.S. at 468. "If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution." *Id.*

In *Armstrong*, the Court analyzed how the Courts of Appeals have determined the showing necessary to obtain discovery to support a selective prosecution claim. The Court recognized "the Courts of Appeals which have considered the requisite showing to establish entitlement to discovery, describe this showing with a variety of phrases, like 'colorable basis,' 'substantial threshold showing,'… substantial and concrete basis,' or 'reasonable likelihood.'" *Id*. The Court concluded "the many labels for this showing conceal the degree of consensus about the evidence necessary to meet it."  In doing so,

the Court held that in order to obtain discovery on a selective prosecution claim,

"'require[s] some evidence tending to show the existence of the essential elements of the

defense,' discriminatory effect and discriminatory intent." *Id.* (quoting *United*

*States* v. *Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).

As mentioned above, Mr. Ibrahim has shown clear evidence of both this

prosecution's discriminatory effect and discriminatory intent. Therefore, Mr. Ibrahim

respectfully requests this Court order discovery to support his selective prosecution claim

prior to issuing its ruling.

### D. Count Four of the Indictment Should be Dismissed Where the Government has Presented no Evidence to Support the Charge.

"A wrongful indictment is no laughing matter; often it works a grievous,

irreparable injury to the person indicted.  The stigma cannot easily be erased.  In the

public mind, a blot on the man's escutcheon, resulting from such a public accusation of

wrongdoing, is seldom wiped out by a subsequent judgment of not guilty." *People v.*

*Rodgers*, 92 Ill. 2d 423, 283 (1982), citing *In Re Fried*, 161 F. 2d 453, 458-59 (2d Cir.

1947).  In this case, the Government has wrongfully indicted Mr. Ibrahim because the

Government failed to present any evidence showing 1) Mr. Ibrahim had the requisite

intent  to knowingly and willingly make a false statement and 2) that Mr. Ibrahim's

statement was material.

//

//

1.  **Mr. Ibrahim did not possess the requisite intent to knowingly and willingly make a false, fictitious, or fraudulent statement.**

Pursuant to 18 U.S.C. Section 1001(a)(2), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, **knowingly and willingly** makes any materially false, fictitious, or fraudulent statement or representation," is guilty. 18 U.S.C. § 1001(a)(2) (emphasis added). The term "false" in this statute "must mean more than simply incorrect or untrue. An intent to deceive or mislead is required under the act." *United States v. Lange*, 528, F.2d 1280, 1287 n.10 (5th Cir. 1976).   In this case, Mr. Ibrahim volunteered the information, and was never asked by Special Agent Higley whether his badge or gun were exposed.  Further, the intent element of the statute precludes conviction for "an honest misinterpretation." *See United States v. Weatherspoon*, 581 F.2d 595, 603 (7th Cir. 1978), abrogated on other grounds by *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986).

Here, the Government has failed to present any evidence to support Count Four's allegation that Mr. Ibrahim *knowingly* or *willfully* made false and fraudulent statements. In Count Four of the Indictment, the Government indicates that Mr. Ibrahim's "statements and representations were false because [he] then and there knew, that he did expose his firearm and DEA badge intentionally while on the grounds of the U.S. Capitol Building on January 6, 2021 in the District of Columbia."

This is simply not true. At the time that Mr. Ibrahim made that statement that he

"Had his firearm and badge on him, but never exposed…. **not that I know of**," there is nothing indicating that Mr. Ibrahim then and there knew, while being interviewed on March 15, 2021, that he exposed his badge and gun. Moreover, the term "exposed" is vague and ambiguous.  In each of these photographs, Mr. Ibrahim had his back to the crowd, and his DEA badge and firearm are only slightly visible.  The photograph was intended to be private, as can be seen by the juxtaposition of Mr. Ibrahim standing in front of and facing away from the crowd behind him.

Moreover, to survive a Rule 12 motion to dismiss, an indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged.  *See United States v. Polychron*, 841, F.2d 833, 834 (8th Cir. 1988).  As a result, if the acts, that are alleged in the indictment, do not constitute a criminal offense, then the Indictment should be dismissed.  *See e.g., United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).  Moreover, the Court will review a 12(b) motion to dismiss the indictment because "it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a sustainable case." *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991).

In this case, it is appropriate for the Court to examine the factual basis for the indictment.  Applying the law to the facts at hand, the Court should analyze the

subjective meaning behind the word "expose" in order to determine the validity of Count Four of the Indictment.  The facts predicating Count Four indicate a lack of sufficiency in its charging of Mr. Ibrahim.  "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense" at issue." *United States v. Carter*, 270 F.3d 731, 737 (8th Cir. 2001).  Here, the Indictment is so defective with regard to Count Four that it fails to charge the offense at issue.  Mr. Ibrahim's interpretation of the word "expose" meant to him, a brandishing, or waving of said firearm. As such, Mr. Ibrahim denied exposing his weapon because he did not brandish or waive his firearm. Mr. Ibrahim never lied about his badge and gun being present on his person at the rally, as he honestly answered that he carried his credentials as a Federal Agent with him on January 6, 2021. Further, Mr. Ibrahim gave the prequalifier statement to his recollection "Not that I know of", relying on photographic evidence to refresh his recollection of the events.  Mr. Ibrahim volunteered this information and was not asked whether his firearm or badge were exposed.  Mr. Ibrahim did not knowingly or willfully make a false statement at that time, as it is alleged in Court Four.  As such, this Count must be dismissed.

It is for this reason that Mr. Ibrahim contends that Count Four of the Indictment fails to sufficiently state an offense because it fails to allege that the defendant acted with the requisite intent.  As discussed above, Count Four alleges that Mr. Ibrahim stated "I had my creds. I had my firearm, and my badge on me…But never

exposed…Not that I know of."  Further the indictment alleges that the statements and representations were false, because, as Mr. Ibrahim then and there knew, he did expose his firearm and DEA badge while on the Grounds of the United States Capitol Building on July 6, 2021, in the District of Columbia.  This count is conclusory and has no basis for alleging that Mr. Ibrahim had the intent to make a false statement.  There is no scienter.   Applying the law to the facts at hand, Count Four does not indicate that Mr. Ibrahim knowingly made false statements.  There is nothing to even infer that he knew that he was making false statements.  At the time of the statement, he was not aware that he "exposed" his weapon.  The word "exposed" itself is also vague and ambiguous and lacks scienter on the part of Mr. Ibrahim.

Further, Mr. Ibrahim contends that Count Four must be dismissed because the law does not criminalize concealment or omission of information not requested, creation of a false impression, failure to volunteer information, or anything except a knowing false assertion of a fact that can be proved or disproved.  *Williams v. United States,* 458 U.S. 279, 285 (1982); *United States v. Waechter*, 771 F.2d 974, 979 (6th Cir. 1985).  Count Four does not adequately charge the statement element of the 18 U.S.C. § 1001(a)(2) violation because Mr. Ibrahim did not make an assertion of fact to Special Agent Higley, a statement that was subject to proof of disproof.  Mr. Ibrahim qualified his statement by adding "not that I know of," indicating that his statement was not free from doubt.  Applying the law to the facts at hand, Mr.

Ibrahim's statement was not an affirmative false statement.  The plain meaning of Special Agent Higley's question was not clear on its face, nor was Mr. Ibrahim's response same, because of the qualifier "not that I know of."  As such, Count Four must be dismissed.

In fact, on March 15, 2021, on the day of Defendant Ibrahim's interview with Special Agent Higley, Special Agent Higley himself was not aware that Mr. Ibrahim had displayed his firearm.  The language used has been confusing and inconsistent. At some point, the word "display" was used.  At other times, the word "exposed" has been used.  These words have subjective meanings to specific individuals.  Mr. Ibrahim perceives the word "exposed" to be analogous the word "brandishing" meaning to waive or flourish something as a threat or in anger or excitement.  In this situation, Mr. Ibrahim did no such thing.

### 2.  Mr. Ibrahim's answer to Special Agent Higley's question was not a material representation, as required under 18 U.S.C. § 1001(a)(2).

Mr. Ibrahim's answer to Special Agent Higley's question was clearly not a "material misrepresentation."  Title 18, United States Code, Section 1001(a)(2) makes it a crime to: 1) knowingly and willfully; 2) make any materially false, fictitious or fraudulent statement or representation; 3) in any matter within the jurisdiction of the executive, legislative or judicial branch of the United States.  To establish materiality, the statement must have "a natural tendency to influence, or be capable of

influencing, the decision of the decisionmaking body to which it was addressed."
*United States v. Gaudin*, 515 U.S. 506, 509 (1995). Mr. Ibrahim's statement does not
meet this threshold.

Materiality requires evidence showing that the false statements could have bearing
on an actual decision entrusted to the decisionmaker. *United States v. Litvak*, 808 F.3d
160, 173-74 (2d Cir. 2015). The "natural tendency" test is an objective one focused on
whether the statement is "of a type capable of influencing a reasonable decision maker."
*United States v. Mcbane*, 433 F.3d 344, 351 (3d Cir. 2005) (relying on *Kungys v. United
States*, 485 U.S. 759, 770 (1988).

Here, the pertinent decision maker was the investigator, Special Agent Higley.
Even if Mr. Ibrahim's weapon and badge were "exposed" under the Government's
interpretation of the word exposed to mean visible to others, whether Mr. Ibrahim's
weapon and badge were actually visible to others has no bearing on a reasonable
decision maker. As a Federal Agent, it was not illegal for Mr. Ibrahim's weapon or
DEA badge to be seen by the public. Furthermore, Mr. Ibrahim voluntarily admitted
the only relevant material fact that he had his weapon and badge on his person. As
such, the fact that Mr. Ibrahim's weapon and badge were "exposed" could not have
any bearing on a reasonable investigator.  Therefore, the alleged false statement was
not material.

//

Therefore, where the Government has failed to present to the Grand Jury evidence sufficient to support Count Four, Mr. Ibrahim respectfully requests that this Court dismiss Count Four of the Indictment.

### E. This Court Should Dismiss Count Two Where Mr. Ibrahim Acted Based Upon the Necessity Exception.

Mr. Ibrahim seeks dismissal of Count Two of the Indictment based upon a necessity defense, in which he asserts any criminal liability should be removed because he was acting to avoid serious harm to himself or others. "The defense of necessity does not arise from a 'choice' of several sources of action; it is instead based on a real emergency." *United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir. 1980). "Consequently, 'if there was a reasonable, legal alternative to violating the law,' the defense fails." *United States v. Dorrell,* 758 F.2d 427, 431 (9th Cir. 1985) (quoting *United States v. Bailey*, 444 US 394, 410 (1980)). To invoke the necessity defense, therefore, "the defendants colorably must have shown that: (1) they were faced with a choice of evils and chose the lesser evil; (2) they acted to prevent imminent harm; (3) they reasonably anticipated a direct causal relationship between their conduct and the harm to be averted; ad (4) they had no legal alternatives to violating the law." *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1992).

On January 6, 2021, Mr. Ibrahim intended to attend a rally to commemorate a historic American event. Instead, Mr. Ibrahim found himself in a chaotic situation where he saw flash-bangs, and watched many people, including police officers, climb on

scaffolding on the Capitol grounds. As the day progressed, he also witnessed smoke, which he believed to be tear gas. Mr. Ibrahim, a veteran, and his brother both described the scene at the Capitol building on the day in question as like a battlefield.  Even though Mr. Ibrahim was not on duty, being a DEA agent, he felt a responsibility to survey the scene and determine the severity of the situation, while keeping himself out of a dangerous situation involving tear gas, flash-bangs, and a rapidly growing crowd. A higher vantage point allowed Mr. Ibrahim to determine if there was anyone in need of aid or if there was anything he could do to help law enforcement in the midst of the emergency situation.

First, Mr. Ibrahim was faced with a choice of evils: step on a statute to gain a higher vantage point or remain on the ground in the midst of a war-like environment. Mr. Ibrahim chose to step on the statute in order to see what he could do to help the situation.

Second, Mr. Ibrahim acted to prevent imminent harm to himself where he was surrounded by tear gas, flash-bangs, and a growing crowd who were harassing law enforcement officials.

Third, Mr. Ibrahim reasonably anticipated a direct causal relationship between his conduct and the harm to be averted; by stepping out of the way of harm to a higher vantage point, Mr. Ibrahim averted harm to himself and put himself in a position where he could help others if needed.

//

Fourth, Mr. Ibrahim had no legal alternatives to violating the law by stepping on the statue. Mr. Ibrahim was stuck in the midst of the crowd at the rally. It would have been dangerous to attempt to leave his position, through a rapidly escalating situation, rather than remain in place and out of the way of law enforcement.

As such, Mr. Ibrahim respectfully requests that this Court dismiss Count Two of the Indictment where he acted based upon the necessity exception.

**F.  The Motion to Dismiss Should be Granted Where the Government has Violated Mr. Ibrahim's Freedom of Speech Under the First Amendment of the United States Constitution.**

The Government's prosecution of Mr. Ibrahim's alleged participation in expressive conduct directly violates the First Amendment of the United States Constitution.  The First Amendment's guarantees of free speech and free expression protect advocacy of the use of force or of law violations except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.  *U.S. Const. Amend. 1; see also Brandenburg v. Ohio*, 395 U.S. 444 (1969). Mr. Ibrahim was exercising his First Amendment right to assemble, and right to freely speak.  Mr. Ibrahim did not incite violence, but rather actively tried to assist in stopping violence.  Mr. Ibrahim's expression on January 6, 2021, does not rise to the level of unprotected speech. Mr. Ibrahim did not corruptly obstruct, influence, or impede an official proceeding, and certainly did not aid or abet others to do the same.  On the contrary, he discouraged Mr. Calzadilla from entering the Capitol Building, and even offered to assist law enforcement

in controlling the crowd.  Therefore, the Indictment should be dismissed because the Government violated Mr. Ibrahim's First Amendment rights.

### G. The Indictment Must be Dismissed Because Mr. Ibrahim was Unlawfully Entrapped as a Matter of Law.

Mr. Ibrahim asks the Court to find that he was entrapped by an undercover law enforcement officer/informant as a matter of law.  Entrapment is an affirmative defense which is comprised of two parts: (1) government inducement of a crime; and (2) lack of predisposition on the part of the defendant. *Mathews v. United States*, 485 U.S. 58, 61 (1988). The defendant bears the initial burden of production to show government inducement. *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995). A defendant may carry this burden by "producing any evidence sufficient to raise a jury issue that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." *Id*. Once the defendant makes this initial showing, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.  *Id*.

### 1.  Mr. Ibrahim was induced by the Government.

In this case, Mr. Ibrahim was induced to attend the January 6, 2021, rally, by a known undercover government informant. While working as an informant for the FBI, Mr. Ibrahim met Mr. Calzadilla in Iraq.  Mr. Calzadilla later told Mr. Ibrahim that he was also an FBI informant and had attended several events and rallies in the United States collecting information.  In 2019, Mr. Calzadilla asked Mr. Ibrahim to take him to a

Second Amendment rally in Richmond, Virginia, where he gathered intelligence for the FBI. Further, Mr. Calzadilla, who was in Colombia at the time, asked Mr. Ibrahim to accompany him to the January 6, 2021 rally.  Mr. Calzadilla has a history of going to rallies and protests and covers them by documenting them and taking photographs for the FBI.  Defendant Ibrahim had planned to return to California the day prior, January 5, 2021.  He drove all the way to the airport on January 5, 2021, and was pressured by Mr. Calzadilla to stay and attend the rally.

 Mr. Ibrahim and Mr. Calzadilla drove together to the Capitol on January 6, 2021. Following the events of January 6, 2021, Mr. Calzadilla attempted to extort Mr. Ibrahim for the photos that he took on January 6, 2021.  The government informant demanded that Mr. Ibrahim "compensate him," and that he "has one chance to make amends."  This is coercive language.  It is of record that Mr. Calzadilla extorted Mr. Ibrahim in the amount of $100,000.

### 2.  Mr. Ibrahim was not Predisposed.

Further, there is absolutely no predisposition on the part of Mr. Ibrahim.  To begin, Mr. Ibrahim had no intent to commit criminal acts.  Notwithstanding this fact, Mr. Ibrahim did not engage in any criminally driven behavior, lacking any indication of the presence of moral turpitude.  Mr. Ibrahim has lived a life filled with patriotism in service. While in college, he volunteered at a hospice for patients diagnosed with HIV and dying of AIDS.  He graduated College with a degree in Theology, with the hopes of serving his

county as a chaplain in the Army. He has dedicated his life to working with needy populations throughout the world and serving the poorest of the poor. Additionally, Mr. Ibrahim devoted his career to protecting the United States by serving in the military and then as a federal agent. Mr. Ibrahim has been cast as an extremist, and a criminal. He is neither. As such, it is clear that Mr. Ibrahim was not predisposed to commit any crimes on January 6, 2021 or thereafter.

Therefore, Mr. Ibrahim respectfully requests that this Court dismiss the Indictment against him because he was entrapped by a Government agent.

## IV.   CONCLUSION

For the above-mentioned reasons, Mr. Ibrahim respectfully requests that this Court dismiss the Indictment where the politically motivated prosecution violates Mr. Ibrahim's Due Process and Equal Protection rights pursuant to the United States Constitution.

Dated: January 28, 2022                    Respectfully Submitted

**DRE LAW, A.P.C.**

By:   */s/Darren M. Richie*
         Darren M. Richie
         Marissa B. Hertzberg
         *Attorneys for Defendant*
         MARK S. IBRAHIM