UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 1:21-cr-00496-TJK-1 |
| | : | |
| | : | |
| MARK S. IBRAHIM | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO MOTION TO COMPEL THE PRODUCTION
OF THE IDENTITIES OF AGENTS AND INFORMANTS (ECF 27)**

The United States of America, by and through the U.S. Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's motion to compel the identities of every federal law-enforcement agent and source present at the U.S. Capitol on January 6, 2021, as well as background information concerning the relationship between his friend (Jorge Calzadilla) and the Special Agent in this case. His request, tethered to his claim of selective prosecution, lacks merit under *United States v. Armstrong*, 517 U.S. 456 (1996). The Special Agent also had no prior relationship or contact with Calzadilla, meaning that the government has no responsive records to produce. The motion to compel should be denied.

**BACKGROUND**

The U.S. Capitol was closed to all members of the public on January 6, 2021. The U.S. Capitol Police actively cordoned off the surrounding area to prevent people from interfering with the Electoral College certification process. Ibrahim nonetheless entered the U.S. Capitol grounds and a restricted area with his DEA-issued firearm. He also climbed the Peace Monument.[1]

---

[1] The government incorporates by reference its factual statements and legal arguments contained in its Opposition to the Motion to Dismiss. ECF No. 22.

The government charged Ibrahim with offenses related to his conduct at the U.S. Capitol on January 6, 2021. Specifically, Ibrahim is charged with violations of 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), 40 U.S.C. § 5104(d)(2)(F) (injuries to property), 40 U.S.C. § 5104(e)(1)(A)(i) (Firearms and Dangerous Weapons on Capitol Grounds), and 18 U.S.C. § 1001(a)(2) (False Statements and Representations).

The government has produced significant discovery regarding the charged offenses and the events of January 6, 2021 generally. With regard to law-enforcement and confidential-informant information, the government has produced:

> 1,676 files consisting of body-worn camera (BWC) footage from the Metropolitan Police Department recorded between 1:00 p.m. and 6:00 p.m. on January 6, 2021 (see October 7, 2021 discovery letter);

> 4,044 files (over one terabyte) consisting of U.S. Capitol Police (USCP) Closed Circuit Video (CCV) footage from 118 cameras (see September 29, 2021 discovery letter);

> 11,176 files (over 3 terabytes) consisting of USCP CCV footage from 339 cameras (see October 7, 2021 discovery letter);

> 1,705 files consisting of USCP CCV footage from 58 cameras (see October 15, 2021 discovery letter);

> 142 files consisting of U.S. Secret Service surveillance exterior camera footage from January 6, 2021 (see October 23, 2021 discovery letter); and

> Reports from investigations of alleged wrongdoing by USCP and MPD officers on January 6, 2021. See 09/13/2021 Discovery Letter; 09/29/2021 Discovery Letter. Those reports detail allegations of USCP officers "pos[ing] for several pictures with Pro-Trump supporters" (see CAPD 000000001); "waiv[ing] unauthorized persons into a restricted area secured by bike racks" (see CAPD_000000021); posting on social media about "how to steal an election" (see CAPD_000000510); "initiat[ing] fist bumps" with individuals near the Rotunda Lobby East stairs (see CAPD_000000560); "pos[ing] for a photograph" with rioters (see CAPD 000000729; CAPD 000000812); "bump[ing] elbows" with a rioter (see CAPD 000000736; CAPD 000000744), among other allegations.

On January 28, 2021, Ibrahim filed a motion to dismiss alleging a selective-prosecution claim. ECF 21, at 20. In his present filing, Ibrahim seeks to compel disclosure of:

> All reports, notes, documents, diagrams, electronic mail, memoranda and records, logs or information related to how many off-duty agents from any federal agency, including but not limited to FBI agents or confidential FBI Informants, actively participated in the events of January 6, 2021;
>
> All reports, notes, documents, diagrams, electronic mail, memoranda and records, logs or information related to how many off-duty agents from any federal agency, including but not limited to FBI agents or confidential FBI Informants, committed crimes of violence on January 6, 2021 at the U.S. Capitol grounds;
>
> All reports, notes, documents, diagrams, electronic mail, memoranda and records, logs or information related to how many off-duty agents from any federal agency, including but not limited to FBI agents or confidential FBI Informants, possessed their service firearm on their person on January 6, 2021 at the U.S. Capitol grounds;
>
> Any and all information related to Law Enforcement presence at the U.S. Capitol grounds on January 6, 2021, whether on or off duty, on official or non-official capacity, with or without their badge and weapons;
>
> All reports, notes, documents, diagrams, electronic mail, memoranda and records, logs or information related to how many FBI agents or confidential FBI Informants actively encouraged and incited crimes of violence on January 6, 2021.

ECF No. 27, at. 4-5. Ibrahim acknowledges that this information is unrelated to his guilt and instead "needed to establish [his] selective prosecution claim." *Id*. at 5.

On March 1, 2022, Ibrahim requested further discovery on any prior relationship between the Special Agent in this case and Jorge Calzadilla—Ibrahim's friend. Ibrahim represented that Calzadilla was present during a portion of the Cliven Bundy standoff. Separately, the Special Agent investigating Ibrahim had initial involvement, through the Office of Inspector General, investigating an FBI agent's shooting of Robert Lavoy Finicum near the Malheur National Wildlife Refuge in Oregon on January 26, 2016. *See United States v. W. Joseph Astarita*, 3:17-

cr-00226-JO (D. Oregon). The government informed Ibrahim that the requested information is not "relevant to the charges or that we have any obligation to compile and disclose." Without waiving any privilege or confidentiality claims, the government further responded that "[t]here was no contact between [the Special Agent] and Jorge Calzadilla prior to [the Special Agent's] investigation into the events of January 6, 2021." Finally, the government observed that the Special Agent first learned of Calzadilla's name and presence from Ibrahim. Ibrahim's counsel also provided the correct spelling of Calzadilla's name and contact information to the Special Agent. *See* Exhibit A.

## ARGUMENT

**I.      Ibrahim is not entitled to selective-prosecution discovery under *Armstrong*.**

Ibrahim alleges that the government selectively targeted him for prosecution, averring that the government has declined to prosecute other officers for participating in the U.S. Capitol riot on January 6. In support of this claim, Ibrahim seeks discovery of all reports, documents, records, and emails pertaining to every FBI agent, law-enforcement officer, and informant present at the U.S. Capitol on January 6. Because Ibrahim has not adduced credible evidence supporting his claim of selective prosecution, he is not entitled to any such discovery.

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as

4

race, religion, or other arbitrary classification," *id.* at 464 (citation omitted). "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

The Supreme Court has imposed a "rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Ibid*. (citation omitted). This evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982).

Ibrahim fails to proffer any evidence (much less credible evidence) on either *Armstrong* prong.

First, Ibrahim has made no colorable showing that the government singled him out for prosecution. His claim rests on the allegation that the government targeted him, but not other off-duty officers present at the U.S. Capitol on January 6. ECF No. 27, at 5. He further proffers that his brother (an off-duty FBI agent) and an armed United States Customs and Border Protection officer have not faced prosecution.[2]   ECF No. 21, at 14-15; ECF No. 27, at 7.

---

[2] Ibrahim also references Special Agent Levi Thomas, who was on official duty with the FBI SWAT team. ECF No. 27, at 6. The government does not understand Ibrahim to argue that on-duty officers assigned to the protect the U.S. Capitol on January 6 serve as proper comparators for his selective-prosecution claim.

This proffer fails to make a credible showing of discriminatory effect because Ibrahim and these other individuals are not similarly situated. On January 6, Ibrahim posed multiple times with his official badge and firearm, and further climbed a monument, in the middle of a riot. His brother, by contrast, stayed on the correct side of the police barricade and candidly admitted his conduct when questioned. The CBP officer presents even more disparate example. This officer faced arrest after attending the "Justice for J6" rally at the U.S. Capitol in September 2021—nine months after the events at issue here. *See* Associated Press, Federal officer arrested at Capitol won't be charged (Sept. 20, 2021), at https://apnews.com/article/arrests-riots-capitol-siege-gun-politics-us-customs-and-border-protection-f35fb9ad54ac0babf710e87eaec8a4b1 (last accessed Apr. 3, 2022). The CBP officer also does not appear to have been on restricted grounds. Because these factual distinctions reflect "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Ibrahim's case, *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (citation omitted), he has not established an inference of discriminatory effect.

Ibrahim's motion further fails to acknowledge that the government has prosecuted active and former law-enforcement officers for criminal acts in connection with January 6. *See, e.g.*, *United States v. Michael Angelo Riley*, 1:21-cr-00628-ABJ-1; *United States v. Jacob Fracker,* 1:21-cr-00034-CRC-2; *United States v. Thomas Robertson*, 1:21-cr-00034-CRC-1; *United States v. Sara Carpenter*, 1:21-cr-00305-JEB-1; *United States v. Tam Pham*, 1:21-cr-00109-TJK-1. These charging examples further undermine Ibrahim's proffered comparator class.

Second, Ibrahim has failed to adduce evidence that discriminatory intent undergird this prosecution. He suggests that the government vindictively targeted him, ECF No. 27, at 6, but

6

fails to demonstrate any constitutionally suspect category that might undergird that allegation. Of note, Ibrahim fails to substantiate his claim that the government prosecuted him due to his political views.  As another member of this Court has observed, everyone who sieged the U.S. Capitol on January 6 presumably shared Ibrahim's politics.  *See* Order Denying Selective Prosecution Claim at 13-14, *United States v. Griffin*, No. 1:21-cr-00092-TNM (Jul. 2, 2021) (ECF No. 41) ("[P]resumably Kelly and the other uncharged protestors surrounding Griffin on the Capitol steps share his 'politics,' complicating his complaint of bias here") (citation omitted). This circumstance vitiates Ibrahim's present assertions of bias.

This Court has previously considered, and denied, a similar vindictiveness claim by a January 6 defendant.  In *Shroyer*, the defendant claimed that the government's prosecution was vindictive and retaliatory because he engaged in First Amendment speech criticizing the government and its handling of the 2020 presidential election.  This Court denied relief, finding "little, if any, evidence … suggesting vindictiveness."  Hrg. Tr. at 14, *United States v. Shroyer*, CR No. 1:21-cr-00542-TJK-1 (Jan. 20, 2022).  It further remarked: "Nor do the four crimes that the defendant is charged with turn on the content of the defendant's potentially expressive actions."  *Id*.  Finally, even assuming "the defendant engaged in constitutionally protected speech" on January 6, this Court held that it still was "not evidence of a vindictive prosecution." *Id*.

Ibrahim's allegation suffers the same deficiency.  The charged offenses do not implicate his political views or his expression on January 6.  And Ibrahim has failed to adduce any other evidence of discriminatory effect or purpose.  He accordingly is entitled to no selective-prosecution discovery and his motion to compel should be denied.

## II. Ibrahim is not entitled to the requested discovery concerning the Special Agent or Calzadilla.

Ibrahim separately demands all information in the government's possession documenting a prior relationship between the Special Agent and Jorge Calzadilla.  ECF No. 27, at 8.  The government has previously informed Ibrahim's counsel and reiterates here: "There was no contact between [the Special Agent] and Jorge Calzadilla prior to [the Special Agent's] investigation into the events of January 6, 2021."  The government has accordingly satisfied its obligations with respect to this particular discovery request.

Ibrahim separately asserts that Calzadilla "will likely be called to testify at trial" and that Ibrahim is "entitled to any information that may impeach a prosecutor's witness."  ECF No. 27, at 9-10.  The government is aware of its obligations to disclose impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972).  In the event this matter proceeds to trial and in the event the government calls Calzadilla as a witness, it will comply with its *Giglio* obligations. *See generally United States v. Edelin*, 128 F. Supp. 2d 23, 38 (D.D.C. 2001) ("[T]he government must provide impeachment styled information concerning government witnesses in time for defendants to make use of it.").

To the extent Ibrahim seeks discovery about Calzadilla's background, including his alleged role as a confidential informant on unrelated matters occurring before January 6, 2021, Ibrahim is not entitled to such information because it has no bearing on the charged offenses in this case.  *See id.* at 33 ("Criminal defendants are only entitled to statements of non-testifying witnesses or co-conspirators if those statements qualify as *Brady* material.").

## CONCLUSION

The Court should deny Ibrahim's motion to compel.

                          Respectfully submitted,

                          MATTHEW M. GRAVES
                          UNITED STATES ATTORNEY
                          DC BAR NO. 481052

By:         /s/
            James D. Peterson
            Trial Attorney
            United States Department of Justice
            Special Assistant United States Attorney – D.C.
            VA Bar 35373
            1331 F Street N.W.
            6th Floor
            Washington, D.C. 20530
            (202) 353-0796
            James.d.peterson@usdoj.gov