UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:21-cr-00496-TJK-1 |
| : | |
| : | |
| MARK S. IBRAHIM : | |
| : | |
| Defendant. : | |

**OPPOSITION TO THE SUPPLEMENTAL MOTION FOR DISCOVEY BASED UPON A CLAIM OF SELECTIVE PROSECUTION (ECF No. 37)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's Supplemental Motion for Discovery Based Upon a Claim of Selective Prosecution. ECF No. 37.

Defendant Ibrahim's supplemental motion raises no new issues or claims. This supplemental filing is in fact the third request for the same relief: expanded discovery based upon a claim of selective prosecution that fails to establish the threshold showing required by *United States v. Armstrong*, 517 U.S. 456 (1996). In this most recent filing, defendant Ibrahim also reduces the number of comparators he claims demonstrates the selectiveness of his prosecution to one identified person, his FBI agent brother. The motions should be denied.

Ibrahim is charged with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. Specifically, Ibrahim is charged with violations of 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), 40 U.S.C. § 5104(d)(2)(F) (injuries to property), 40 U.S.C. § 5104(e)(1)(A)(i) (Firearms and Dangerous Weapons on Capitol Grounds), and 18 U.S.C. § 1001(a)(2) (False Statements and Representations). Ibrahim does not dispute that he was present on Capitol Grounds and Restricted Grounds armed with a deadly weapon, his DEA-

issued firearm. Rather, Ibrahim seeks greatly expanded discovery—including internal communications of the Department of Justice—based on the claim that he was selected for prosecution because of his political beliefs. That claim lacks merit.

## FACTUAL BACKGROUND

To avoid repetition, the government incorporates by reference its lengthy statement of facts in opposition to the motion to dismiss, *see* ECF No. 22, supplementing with pertinent facts applicable here. On January 28, 2022, Ibrahim filed a motion to dismiss the indictment based, in part, upon his claim that he is being selectively prosecuted. ECF No. 21. That motion to dismiss requested, in part, to obtain discovery to further support the selective prosecution claim prior to the Court making its determination. ECF No. 21, pg. 20. That request was made pursuant to *United States v. Armstrong*, 517 U.S. 456, 468 (1996). *Id*. Subsequently, on March 27, 2022, Ibrahim filed a motion to compel discovery to support his claim of selective prosecution. ECF No. 27. That motion specifically requested the production of "All reports, notes, documents, diagrams, electronic mail, memoranda and records, logs or information related to how many off-duty agents from any federal agency, including but not limited to FBI agents or confidential FBI Informants, actively participated in the events of January 6, 2021." ECF No. 27, pg. 4. The government responded to both motions. ECF Nos. 22, 31.

In this third motion, Ibrahim requests that the Court order the government to produce (1) training materials for the Department of Justice, Office of Inspector General, Special Agent who investigated the matter, (2) policies and data on cases declined in the category of federal law-enforcement officers, (3) policies, and procedures on decisions regarding the prosecution of January 6 cases for individuals who did not enter the Capitol building, (4) policies, and

2

procedures on decisions regarding the prosecution of federal employees who express conservative beliefs or beliefs in support of Donald Trump, and (5) all records, recordings, documents, notes, memoranda, communications, and correspondences referencing any deliberations or decisions to charge or indict Mark Ibrahim.   ECF No. 37-1, pg. 20.

In its response to the original motion to dismiss, the government cited and disclosed relevant portions of the DEA Policy Manual as it relates to agents carrying firearms.   *See* ECF No. 22, pg. 15-16.   The government stated:

> Defendant Ibrahim claims that he carried his gun and badge on his person because he was encouraged to do so at all times by his employer, whether on or off duty. ECF No. 21, pg. 9.   Ibrahim offers no support or corroboration for this statement. In fact, defendant Ibrahim's statement is contrary to established and promulgated DEA policy. The DEA Agents Manual provides, in part, that the "procedures, guidelines and other provisions of the Drug Enforcement Administration (DEA) Agents Manual are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." Further, and more specifically, the DEA Manual has a policy concerning carrying firearms, both on duty and off duty. Even while on duty, DEA agents are not encouraged, or even permitted, to carry firearms "at all times." The DEA Agents Manual provides that while on official duty status "SAs must carry their handgun on their person, secured in a holster, fully loaded, with a round in the chamber (for semi-automatic handguns) and with an adequate supply of at least one reload of ammunition except . . . 4. Subject to another agency's bona fide security requirements." Consequently, even while on duty, DEA SAs are subject to other agency's security requirements, in this case the United States Capitol's ban on firearms on Capitol Grounds. The off-duty provisions are even less supportive of defendant Ibrahim's position, providing merely that "SAs are authorized to carry their firearm while available for duty or while in an approved leave status."

*Id*.

## ARGUMENT

Ibrahim contends that the government selectively targeted him for prosecution, averring that the government has declined to prosecute other officers for participating in the U.S. Capitol riot on January 6.   In his supplemental motion, defendant Ibrahim argues that "other, armed, off-

duty federal law enforcement officers who attended the protest, including Mark Ibrahim's brother, who attended along with Mr. Ibrahim, were not charged." ECF No. 37-1.  In support of his claim, however, he identifies only one person, his brother.

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (citation omitted).  "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

The Supreme Court has imposed a "rigorous standard for discovery in aid of such a claim."  *Armstrong*, 517 U.S. at 468.  The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent."  *Ibid*. (citation omitted).  This evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence."  *Id*. at 470.  "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery."  *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982).

This proffer fails at the first step to make a credible showing of discriminatory effect because Ibrahim and his brother are not similarly situated. To be sure, it may be that defendant Ibrahim shares the same or similar views as his brother. *See* ECF No. 37-1, pg. 10 (suggesting that his brother held similar views about the flag that defendant Ibrahim carried). But defendant Ibrahim engaged in significantly different conduct than his brother on January 6. Defendant Ibrahim posed multiple times with his official badge and firearm exposed, climbed a monument in the middle of the riot, and lied to the Special Agent investigating the matter. His brother, by contrast, stayed on the correct side of the police barricade at the Peace Monument and candidly admitted his conduct when questioned. Because these factual distinctions reflect "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Ibrahim's case, *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (citation omitted), he has not established an inference of discriminatory effect. Indeed, Ibrahim's motion further fails to acknowledge that the government has prosecuted active and former law-enforcement officers for criminal acts in connection with January 6. *See, e.g.*, *United States v. Michael Angelo Riley*, 1:21-cr-00628-ABJ-1; *United States v. Jacob Fracker*, 1:21-cr-00034-CRC-2; *United States v. Thomas Robertson*, 1:21-cr-00034-CRC-1; *United States v. Sara Carpenter*, 1:21-cr-00305-JEB-1; *United States v. Tam Pham*, 1:21-cr-00109-TJK-1, *United States v. Thomas Webster*, 1:21-cr-00208 (APM). These charging examples further undermine Ibrahim's proffered comparator class.[1]

---

[1] Ibrahim also fails to mention the cases *United States v. Mark Mazza*, No. 1:21-cr-00736-JEB-1 and *United States v. Christopher Alberts*, No. 21-CR-026 (CRC), both of which involve alleged violations of 40 U.S.C. § 5104(e)(1)(A).

Second, Ibrahim has failed to adduce evidence that discriminatory intent undergirded this prosecution. In short, he has made no colorable showing that the government singled him out for prosecution. His claim rests on the allegation that the government targeted him, but not other off-duty officers present at the U.S. Capitol on January 6. Ibrahim fails to proffer any evidence (much less credible evidence) on either *Armstrong* prong. The only support he proffers is his anecdotal observation that "Mr. Ibrahim's brother was not charged — even though he too had his department-issued firearm on his person." ECF No. 37-1, pg. 17. Ibrahim includes as exhibits two letters from Congressman Jim Jordan that claim that certain FBI employees were subject to retaliation because of their participation in the events of January 6, 2021. The letters from Congressman Jim Jordan, however, do not suggest that those individuals were unlawfully present within a restricted area within Capitol Grounds on January 6, 2021, with a firearm. More problematic for Ibrahim's legal claims, the letters from Congressman Jordan suggest that the FBI is trying to retaliate against its own officers, yet the example that Ibrahim relies upon is an FBI agent who was not charged.[2] Ibrahim fails to make any threshold showing under *Armstrong* that would justify a sweeping production of internal DOJ documents. In any event, if Federal Agents who shared defendant's views were present but not charged, it would tend to **disprove** his claim here. *See* Order Denying Selective Prosecution Claim, *United States v. Griffin*, No. 1:21-cr-00092-TNM, (Jul. 2, 2021) ECF No. 41, pg. 13-14 ("Not all differences amount to discrimination. In any event, presumably Kelly and the

---

[2] Ibrahim has apparently abandoned as alleged comparators the armed United States Customs and Border Protection officer who was not on Capitol grounds as well as Special Agent Levi Thomas, who was on official duty with the FBI SWAT team on January 6, 2021. *See* ECF No. 21, at 14-15; ECF No. 27, at 6 and 7.

other uncharged protestors surrounding Griffin on the Capitol steps share his "politics," Def.'s Reply at 3, complicating his complaint of bias here").

He places great stock in the fact that he displayed a flag and was charged. But many people displayed flags that day, and some were charged while others were not, depending upon their conduct.



It does not follow that he was prosecuted because of his political views.

"Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016).

Ibrahim's motion fails to adduce any credible evidence—as *Armstrong* demands—supporting either that his charges arise from a discriminatory effect or that it was motivated by a

discriminatory purpose.

    WHEREFORE, the government respectfully requests that this Court deny Defendant's motion for discovery to support a selective prosecution claim.

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          UNITED STATES ATTORNEY
                                          DC BAR NO. 481052

By:           /s/
        James D. Peterson
        Trial Attorney
        United States Department of Justice
        Special Assistant United States Attorney – D.C.
        VA Bar 35373
        1331 F Street N.W.
        6th Floor
        Washington, D.C. 20530
        (202) 353-0796
        James.d.peterson@usdoj.gov