UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:21-cr-00496-TJK-1** |
| | : | |
| | : | |
| **MARK S. IBRAHIM** | : | |
| | : | |
| **Defendant.** | : | |

## OPPOSITION TO THE MOTION FOR DISCLOSURE OF GJ MATERIALS UNDER THE PROTECTIVE ORDER (ECF No. 35)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's motion for the public disclosure of grand jury transcripts.   ECF No. 35.

The DEA does not object to the limited disclosure of the portion of the DEA Agents manual identified by defendant Ibrahim in his pleading, namely that DEA agents "are required to be available for duty with little or no advance notice" and "must have ready access to their firearm in the event that they are recalled to duty."   The DEA would object to the entire page being removed from the protection of the protective order (other than the specific lines from the policy that were already disclosed in ECF No. 22).

The public disclosure of the identified portions of the grand jury transcript is not necessary or justified for several reasons.   First, the public disclosure is unnecessary because the items and information have been disclosed to the Court under seal, and the Court is the authority that must review and decide the issues presented.   At this stage of the proceedings, there is no basis for further disclosure.   Second, defendant cannot meet the threshold to justify public disclosure of grand jury testimony, particularly not for the selective and curated portions that defendant suggests are necessary to complete the public record, but which have little, or no,

relevance to his claim for expanded discovery regarding purported selective prosecution.

## FACTUAL BACKGROUND

In its response to defendant's original motion to dismiss, the government cited and disclosed relevant portions of the DEA Policy Manual as it relates to agents carrying firearms. *See* ECF No. 22, pg. 15-16.   The government stated:

> Defendant Ibrahim claims that he carried his gun and badge on his person because he was encouraged to do so at all times by his employer, whether on or off duty. ECF No. 21, pg. 9.   Ibrahim offers no support or corroboration for this statement. In fact, defendant Ibrahim's statement is contrary to established and promulgated DEA policy. The DEA Agents Manual provides, in part, that the "procedures, guidelines and other provisions of the Drug Enforcement Administration (DEA) Agents Manual are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." Further, and more specifically, the DEA Manual has a policy concerning carrying firearms, both on duty and off duty. Even while on duty, DEA agents are not encouraged, or even permitted, to carry firearms "at all times." The DEA Agents Manual provides that while on official duty status "SAs must carry their handgun on their person, secured in a holster, fully loaded, with a round in the chamber (for semi-automatic handguns) and with an adequate supply of at least one reload of ammunition except . . . 4. Subject to another agency's bona fide security requirements." Consequently, even while on duty, DEA SAs are subject to other agency's security requirements, in this case the United States Capitol's ban on firearms on Capitol Grounds. The off-duty provisions are even less supportive of defendant Ibrahim's position, providing merely that "SAs are authorized to carry their firearm while available for duty or while in an approved leave status."

*Id*.


## ARGUMENT

The grand jury testimony is confidential.   The grand jury transcripts have been provided to counsel as part of discovery and they have been submitted to the Court in connection with the defendant's motion.   There is no justification for defendant's request to disclose these confidential materials publicly at this stage of the proceedings.   Put another way, the

government has carried its burden of showing that the grand jury transcript should remain subject to the non-disclosure provision of the protective order because they are legally protected from disclosure and have been fully disclosed to the Court which shall be deciding any issue in controversy.

Transcripts of grand jury testimony are confidential and the disclosure of transcripts is prohibited.  *See* Fed. R. Crim. Proc. 6(e)(2).  A party is not automatically entitled to even get a copy of his own testimony.  *See In re Grand Jury*, 490 F.3d 978, 990 (D.C. Cir. 2007), *see also United States v. John Doe, Inc. I,* 481 U.S. 102, 125-26 (1987) (Brennan, J., dissenting) (citing "the well settled rule that a witness is not entitled to a copy of his grand jury testimony on demand, even though he obviously was present in the grand jury room during the receipt of evidence, since a rule of automatic access would expose grand jury witnesses to potential intimidation by making it possible for those with power over the witness to monitor his or her testimony").  Moreover, simply because the government provided the defense with copies of the grand jury testimony does not mean that he has a further right to publicly disclose that testimony.  *See In re Grand Jury Proceedings*, Grand Jury Action No. 21-48 (BAH), 2022 U.S. Dist. LEXIS 28077, 2022 WL 474134 (D.D.C., Feb. 16, 2022).  *See also Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008) (Grand jury transcripts obviously "would tend to reveal some secret aspect of the grand jury's investigation, such . . . as the identities or addresses of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like"); *see, e.g., Sanders v. Obama*, 729 F. Supp. 2d 148, 156 (D.D.C. 2010) ("To disclose a [grand jury] transcript would be to disclose the inner workings of the grand jury, which is prohibited.").

The DEA does not object to the limited disclosure of the DEA Agent's Manual, as stated above. However, the DEA does object to further disclosure, or the disclosure of the entire section provided to counsel. Provisions of the DEA Agent's Manual disclosed to the defendant are confidential. Each page of the provisions produced provides "This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel." The DEA Agent's Manual is highly sensitive. *See United States v. Norita*, 708 F. Supp. 2d 1043, fn. 3 (D. N. Mar. I. 2010). The DEA has maintained that "portions of the Agent's Field Manual . . . contained sensitive information disclosure of which could undermine the DEA's investigative mission, and quite possibly endanger the lives of agents in the field." *Id.*, at 1048.

In the present case, there is no need to publicly disclose the grand jury transcripts. The defendant has been provided the grand jury transcripts, and the defendant has submitted what he believes are the relevant portions of the transcript to the Court for its consideration in deciding the issues before it. There is simply no basis for public disclosure. Further, the information sought to be disclosed has marginal, if any, relevance to the motion under consideration.

Defendant suggests that the Court should open for public disclosure the grand jury testimony of the Office of Inspector General Special Agent who investigated the case. The request is tied to defendant's claim, in his motion for expanded discovery, that the "outward expression of conservative beliefs appears to have been the tipping point for Mr. Ibrahim's charges." ECF No. 37-1, pg. 18. In support of that claim, defendant Ibrahim references one sentence spoken by the Special Agent to the Grand Jury. *Id*. Defendant's selective citation,

however, fails to indicate that the agent's statement was simply a recapitulation of information that was provided to the agent by defendant Ibrahim's friend and eyewitness. As publicly disclosed in the criminal complaint, the source of the belief that defendant Ibrahim was possessing and displaying his DEA badge and firearm on restricted grounds for political-commercial reasons was not the investigating special agent, but the defendant's own friend. *See* ECF No. 1-1, pg. 15. This fact is made abundantly clear in the publicly available criminal complaint, which states:

> According to the friend, IBRAHIM crafted this story about how his friend was at the Capitol to assist the FBI and that IBRAHIM was there helping him. IBRAHIM's friend told your affiant that he was not there in any formal capacity for the FBI and that the FBI was not giving him directions or marching orders. He said that IBRAHIM crafted this story in an effort to "cover his ass." According to IBRAHIM's friend, IBRAHIM went to the rally in order to promote himself—IBRAHIM had been thinking about his next move after leaving the DEA and wanted the protests to be his stage for launching a "Liberty Tavern" political podcast and cigar brand.

ECF No. 1-1, pg. 15. On April 5, 2021, the friend and eyewitness told the Special Agent in a phone interview that:

> Ibrahim had "created this narrative" that he (Ibrahim) had gone to the January 6, 2021 protests at the U.S. Capitol to help [the friend], when in fact Ibrahim went there to promote himself. [The friend] said that Ibrahim wanted to create a political podcast and a "Liberty Tavern" cigar label. He said that Ibrahim went to the Capitol that day because he saw it as an opportunity to promote himself and his own personal brand. [The friend] said the reason Ibrahim did not want [the friend] out of his line-of-sight that day was because Ibrahim wanted [the friend] to take pictures of Ibrahim to promote his brand.
>
> [The friend] said he was "so mad." He said Ibrahim kept calling, but [the friend] did not want this to "be the Mark Ibrahim show." He wanted to document what was happening at the Capitol for posterity. [The friend] said he was there at the Capitol to do serious work and Ibrahim was using him to promote himself. [The friend] said Ibrahim was calling him to say, "Get a shot of me" over here and Ibrahim was using [the friend] to show, "look at me, I'm here." [The friend] said he "felt cheated" he wanted to be documenting the scene, not Ibrahim. He said Ibrahim kept insisting that this was going to be cool for the brand.
>
> [The friend] was asked about a video in which Ibrahim appeared to be directing the

filming and narrating into the camera. [The friend] said, "It's an act." [The friend] said that Ibrahim believed that there was a deep state and the Chinese were in on this, and that Ibrahim was saying those things because he was thinking of the demographic he was targeting and was going to exploit them. [The friend] said, "It's all bullshit," it was all "canned," and Ibrahim was trying to win points with the people.

[The friend] said that Ibrahim wanted [the friend] to photograph him at the rally posing with his badge and gun. He said that Ibrahim was flashing his badge and gun for the pictures.   [The friend] said that he did not think this was appropriate and did not look good for a federal agent to be doing that.

Interview dated April 5, 2021.

The statements to the special agent by defendant Ibrahim's friend are also amply corroborated by the publicly available record.   Ibrahim created a YouTube channel called the Liberty Tavern Channel.   Ibrahim interview, March 15, 2021, pg. 53.   Ibrahim posted one video of January 6, 2021 to his channel, or allowed the video to be posted.   In a series of three video shorts, Ibrahim can be heard discussing Liberty Tavern cigars just feet from the Capitol.



Ibrahim can be heard saying "just chilling, enjoying a Liberty Tavern Cigar. On the steps of the Capitol. Mazel tov."   *See* https://www.youtube.com/watch?v=rKNnQrUnSgE.



In another episode, he says "Fuck it, let's do it live. Let's go check it out."  *See*

https://www.youtube.com/watch?v=MhEcmIE0roo.



In another episode, he says "Just here at the steps of the Capitol enjoying a nice Liberty Tavern cigar and yeah, apparently some guys got in." See

https://www.youtube.com/watch?v=mxN8mXBBuxI.    The interview with the friend, and the posting of the Liberty Tavern Cigar videos all occurred in advance of the agent's grand jury

testimony. The grand jury statements reflect the observations of an eyewitness to defendant Ibrahim's conduct, not the agent's personal beliefs.

In sum, the full grand jury testimony of the Special Agent and defendant's friend, which the government is submitting in a supplemental filing under seal for the Court's consideration, will make these facts clear, and there is no need for public disclosure of grand jury materials.

The government understands that, under the terms of the protective order, "the burden of demonstrating the need for a protective order remains with the government at all times." In the present case, the legally recognized confidentiality of the transcript, as well as the fact that Court has full access to the information, demonstrates that no public disclosure is warranted for this item at this time.

## CONCLUSION

WHEREFORE, the government respectfully requests that this Court deny Defendant's motion for disclosure of portions of the grand jury testimony.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By: _____/s/_____
James D. Peterson
Trial Attorney
United States Department of Justice
Special Assistant United States Attorney – D.C.
VA Bar 35373
1331 F Street N.W.
6th Floor

        Washington, D.C. 20530
        (202) 353-0796
        James.d.peterson@usdoj.gov