UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **V.** ) | CASE NO: 1:21-CR-496 |
| ) | |
| **MARK IBRAHIM,** ) | HEARING: JUNE 30, 2022 |
| ) | |
| DEFENDANT. ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR DISCOVERY ON SELECTIVE PROSECUTION**

In response to the defendant's Motion for Discovery Based on Selective Prosecution, the government filed an opposition which argues, summarily, that the defendant has not reached his legal burden — yet, curiously, ***the government never explicitly denies selectively prosecuting the defendant***. Moreover, the government also fails to respond to the defendant's claims of bias against conservatives by their lead investigating agent, SA Higley.

Instead, the government provides a list of cases that they claim the defendant should have referenced, a list that the government appears to imply will show that there is no discriminatory intent on their part in charging Mr. Ibrahim. The government fails to provide any additional information about this list of cases. The facts of those cases, however, are critical in evaluating the government's evenhandedness— or lack thereof.

The government's referenced cases and their facts are listed below. The facts of these cases and coordinating charges show their absolute incongruence with the case of Mr. Ibrahim. In fact, a review of these cases bolsters the defendant's arguments.

1) *United States v. Michael Angelo Riley*, 1:21-cr-00628-ABJ-1

According to the government's pleadings, Mr. Riley, a U.S. Capitol Police officer, in the midst of the federal investigation of the Capitol breach, "directed" an individual who was present at the Capitol on January 6 "to conceal evidence, writing, 'im a capitol police officer who agrees with your political stance.  Take down the part about being in the building they are currently investigating and everyone who was in the building is going to charged. Just looking out!'" Mr. Riley then allegedly deleted his messages after learning that the FBI was investigating his interaction with this individual. Mr. Riley was charged with two felony counts of obstruction of justice.

This case is not similar to that of Mr. Ibrahim.

2) *United States v. Jacob Fracker*, 1:21-cr-00034-CRC-2

According to the government's pleadings, Mr. Fracker entered the Capitol building with Mr. Thomas Robertson (see below), they "donned gas masks," and "stood in the path of the MPD officers" to prevent the officers from stopping "rioters." Mr. Fracker then "bragged" that "he had taken a 'piss' in 'Nancy P's toilet.'" Mr. Fracker is not a federal officer. Mr. Fracker was charged with 18 U.S.C. § 371 and 18 U.S.C. § 1512, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges.

This case is not similar to that of Mr. Ibrahim.

3) *United States v. Thomas Robertson*, 1:21-cr-00034-CRC-1

According to the government's pleadings, Mr. Robertson entered the Capitol building with Mr. Fracker, they "donned gas masks." "stood in the path of the MPD officers," and "Robertson used his stick to impede the officers' path" to prevent the officers from stopping "rioters." Mr. Robertson is not a federal officer. Mr. Robertson was charged with 18 U.S.C. § 231 and two counts of 18 U.S.C. § 1512, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges.

This case is not similar to that of Mr. Ibrahim.

4) *United States v. Sara Carpenter*, 1:21-cr-00305-JEB-1

According to the government's pleadings, Ms. Carpenter entered the Capitol building and interfered with a law enforcement officer. Not much else is known about this case. She has a trial scheduled for November of this year. Ms. Carpenter is not a federal officer. Ms. Carpenter is charged with 18 U.S.C. § 231, 18 U.S.C. § 1512, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges.

This case is not similar to that of Mr. Ibrahim.

5) *United States v. Tam Pham*, 1:21-cr-00109-TJK-1

According to his plea agreement, Mr. Pham entered the Capitol building after observing torn-down barricades. He took some photos inside the building.

Mr. Pham is not a federal officer. He was charged with 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges.

This case is dissimilar from that of Mr. Ibrahim.

6) *United States v. Thomas Webster*, 1:21-cr-00208 (APM).

Mr. Webster was found guilty of all charges, including assaulting a Metropolitan Police Department officer in front of the Capitol— after he was labeled as the "eye gouger" on social media for photos of him appearing to poke his thumb into the officer's eye, while yelling "F--king piece of s--t, commie motherf----r!" Prior to that, Mr. Webster swung a metal flagpole at this officer and charged him, throwing him on the ground. He also tried to remove the officer's gas mask. Mr. Webster is not a federal officer. Mr. Webster was found guilty of 18 U.S.C. § 231, 18 U.S.C. § 111, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges.

This case is not similar to that of Mr. Ibrahim.

7) *United States v. Mark Mazza*, No. 1:21-cr-00736-JEB-1

According to the government, Mr. Mazza, while armed with a pistol, "assisted the rioters" in pushing into a group of officers, "Mazza held open one of the doors, against the direction and active resistance of the MPD and USCP officers in the tunnel, and as he did so, other rioters used flag poles, batons, sticks, and stolen law enforcement shields as weapons to strike at, hit, and try to force their way through, multiple MPD and USCP officers… When one MPD officer was using his metal collapsible baton to push back the rioters, Mazza took control of the baton from the officer's hand. Mazza then armed himself with the baton and swung the baton overhead and downward to strike at the officers in the tunnel entrance. Mazza's baton struck MPD Officer P.N. in the arm. After striking at the officers with the baton, Mazza yelled at the officers, 'This is our fucking house! We own this house! We want our house! Get out of the citizen of the United States' way!'" Mr. Mazza, who is not a federal officer, was charged with 18 U.S.C. § 231, 18 U.S.C. § 1512, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges, and local DC charges. He pleaded guilty to two charges, including assault on an officer.

The alleged conduct goes on and on, none of which is relevant to the case of Mr. Ibrahim.

8) *United States v. Christopher Alberts*, No. 21-CR-026 (CRC)

Mr. Alberts, who was arrested on January 6, according to the government's indictment, forcibly assaulted one officer and interfered with another. Mr. Alberts, who is not a federal officer, was charged with 18 U.S.C. § 231, 18 U.S.C. § 111, in addition to 18 U.S.C. § 1752 and 40 U.S.C. § 5104 charges, and local DC charges.

The government's last case is also not similar to that of Mr. Ibrahim.

Mr. Ibrahim did not enter the Capitol and he did not assault officers. In fact, he did the exact opposite: he *stopped* a man from entering the Capitol and he *defended* police officers from protestors. Mr. Ibrahim lamented the degradation of the event that he expected to be a peaceful protest. None of the eight defendants mentioned by the government are similarly situated to Mr. Ibrahim. Their alleged conduct is not like that of Mr. Ibrahim or the group of individuals whom Mr. Ibrahim argued in his motion as similarly situated but not charged.

In Mr. Ibrahim's argument, he does not compare his case to just any remote case from January 6 (which is what the government has done), Mr. Ibrahim instead compares his prosecution only to *similarly situated* individuals, as the law requires — individuals who were armed, off-duty federal officers, who did not enter the Capitol on January 6. It is precisely this group of individuals that the government ignored in their brief, yet the only group that applies to the argument of selective prosecution. See *United States v. Ethan Nordean*, 1:21-cr-00175-TJK, Ecf. No. 378 (June 7, 2022) ("similarly situated" individuals are those who committed "about the same crime under about the same circumstances… in relation to the January 6, 2021 attack on the Capitol"). All individuals referenced by the government — individuals who assaulted officers, who entered the Capitol building, or who assisted January 6 defendants with the destruction of evidence — are *not* similarly situated to Mr. Ibrahim.

The government's response leaves the burning question unanswered: how many off-duty federal officers who attended the protest outside of the Capitol on January 6, who did not enter the Capitol, were criminally charged? Based on the government's list of cases, it appears that the answer is none other than Mr. Ibrahim, even though the government *appears to acknowledge that*

*such officers were present outside the Capitol on January 6* when the government discussed the letters of Congressman Jim Jordan.¹

Nonetheless, the government did respond to the defendant's comparison of his case to that of his brother.

In distinguishing Mr. Ibrahim from his brother, the government properly cites the legal standard, "distinguishable legitimate prosecutorial factors," but does not actually rely on such factors in their argument. Instead, the government lists three factors and moves on. The government alleges that 1) the defendant posed for photographs "with his official badge and firearm exposed," 2) climbed a monument full of protesters on it, and 3) "lied to a special agent." Aside from the fact that Mr. Ibrahim never "exposed" his firearm, and was talking to the agent about the said firearm, the exposure is not an element of any criminal offense. The government has *created* a criminal offense for this defendant that references the exposure of the firearm and accuses the defendant of lying to their agent about it. Government factors 1 and 3 are part of one singular allegation.

For clarification, this allegation stems from one line out of a voluntary interview in which SA Higly asked Mr. Ibrahim about bringing his "protective equipment" to the protest, and his "creds," to which Mr. Ibrahim responded to being in possession of his creds and his firearm, and added to his response that he was also in possession of his badge. Mr. Ibrahim then commented

---

[1] In arguing that Jim Jordan's letters disprove the defendant's position, the government shows that they fail to grasp the distinction made by the defense in our original argument — that it is Mr. Ibrahim's outward, public conservatism that lead to his criminal charges, not the existence of conservative beliefs in general. As the defense pointed out, it was "outward political expression" that differentiated Mr. Ibrahim from his brother. "Mr. Ibrahim asserts that he was selectively prosecuted based on his conservative political beliefs and outward expression thereof," while "his brother and other off-duty officers who attended the January 6 protest but withheld political outwardness" were not. The defense also cites case law on vocal political expression as distinguishable from political beliefs in general. See ECF No. 37.

that he "never exposed, not that I know of" — in response to the officer's original question of "protective equipment" and "creds" — again, neither of which was ever exposed. SA Higley clearly believed Mr. Ibrahim is referring to the firearm when Mr. Ibrahim made this comment, which he followed up with, "That's your DEA-issued Glock, whatever it is, the 19 or something?" And Mr. Ibrahim responded with, "yes." For reference, "creds" is distinct from a badge, and has the appearance of an identification card.

```
18         MR. IBRAHIM:  I am a big fan of
19   constitutional rights, and freedom of speech.
20         MR. HIGLEY:  Okay.  And then, what, sort
21   of, let's call it protective equipment did you
22   bring with you?  You bring your DEA creds?
23         MR. IBRAHIM:  I did.  I had my creds.  I
24   had my firearm, and my badge on me.
25         MR. HIGLEY:  Okay.
 1         MR. IBRAHIM:  But never exposed.
 2         MR. HIGLEY:  Okay.
 3         MR. IBRAHIM:  Not that I know of.
 4         MR. HIGLEY:  That's your DEA-issued Glock,
 5   whatever it is, the 19 or something?
 6         MR. IBRAHIM:  Yes.
```

The government's entire false statement case rests on parsing language in Mr. Ibrahim's response to SA Higley asking about what protective equipment he brought, accusing Mr. Ibrahim of exposing his firearm and badge in photos and then zooming in on what appears to be a concealed firearm near his badge — even though Mr. Ibrahim and SA Higley were discussing Mr. Ibrahim's "creds" and firearm, neither of which were ever exposed, and which Mr. Ibrahim readily reported as having on him. The government conceals the context of Mr. Ibrahim's statement in the indictment. The government's craft in creating a case out of thin air is precisely the type of malice that the defense seeks to investigate.[2]

Sitting on the monument is the only distinguishing behavior between Mr. Ibrahim and his brother. Yet the government does not allege that everyone who climbed this monument was charged for the offense of doing so. Photographic evidence shows many individuals standing on

---

[2] Interestingly, the government's malice is also highlighted by a contradiction the government added to its response pleading. In their brief, the government quoted their prior statement, on the record in ECF No. 22 and now on the record at ECF No. 38, that, "DEA agents are not encouraged" to carry firearms. Yet, as the defense pointed out in ECF. 37, the government's agent testified to the **complete opposite** under oath before the Grand Jury. For further discussion on this issue, see forthcoming ECF No. 40.

this statue on January 6, and certainly, this group of protesters was not the first in history to climb that statue. As Mr. Ibrahim pointed out in his prior pleading, the federal government has never enforced the criminal offense of climbing a statute prior to January 6. Moreover, climbing a monument is small potatoes compared to the felony charge of possession of a firearm in a restricted area — the charge that the government chose not to bring against Mr. Ibrahim's brother. And, while on that monument, the defendant recorded a video expressing his disappointment with the direction of the January 6 rally. Climbing that monument is simply not a legitimate distinguishable prosecutorial factor.

Most importantly, the defense remains unaware of any other defendant who was arrested for nonviolent behavior outside of the Capitol building. The defense is aware of the case of Defendant Couy Griffin, who was charged for conduct that took place on the *balcony* of the Capitol building; and the case of Brandon Straka, who was charged for conduct on the *steps* of the Capitol building — he pleaded guilty and acknowledged the conduct of "yelling 'go, go, go' to encourage others to enter the U.S.Capitol." Both Mr. Griffin and Mr. Straka made physical contact with the Capitol building; Mr. Ibrahim did not. **The defense is not aware of anyone who was criminally charged for nonviolent conduct that was limited to the outside of the physical perimeter of the Capitol building, other than Mr. Ibrahim; yet thousands were present.**

Based on the defense review of the government's investigation of Mr. Ibrahim, it appears clearly that Mr. Ibrahim was selected for investigation and prosecution based on his outward conservative beliefs. The government's investigation of Mr. Ibrahim reveals the government's burgeoning intolerance of outwardly conservative political viewpoints in federal employment.

Date: June 24, 2022

                                              Respectfully submitted,
                                              By Counsel:

                                              _____/s/_____
                                              Marina Medvin, Esq.
                                              *Counsel for Defendant*
                                              MEDVIN LAW PLC
                                              916 Prince Street
                                              Alexandria, Virginia 22314
                                              Tel:  888.886.4127
                                              Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

    I hereby certify that on June 24, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

                                              _____/s/_____
                                              Marina Medvin, Esq.