UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **V.** ) | CASE NO: 1:21-CR-496 |
| ) | |
| **MARK IBRAHIM,** ) | |
| ) | |
| DEFENDANT. ) | |

**MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

Defendant moves for dismissal of Count One the Indictment pursuant to Fed. R. Crim. P. 12(b)(1) and 12(b)(3). The defendant further seeks dismissal *with prejudice* of Count One of the Indictment as a sanction under Fed. R. Crim. P. 5(f), the Due Process Protections Act, and this Court's Order of compliance, dated September 8, 2021, on the grounds that the government deceived the Grand Jury as to the whereabouts of the Vice President-elect, neglected to notify defense counsel of the exculpatory evidence showing that the Vice President-elect was not present in the Capitol, and failed to correct the Indictment in a timely manner within 15 months following the indictment.

In Count One of the Indictment, Mr. Ibrahim was criminally charged for entering or remaining on Capitol Grounds where the Vice President and Vice President-elect were temporarily visiting, with a deadly weapon or firearm, pursuant to 18 U.S.C. § 1752(a)(1) and (b)(1)(A). The government alleged that:

> On or about January 6, 2021, within the District of Columbia, MARK S. IBRAHIM, did knowingly enter and remain in or on restricted grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the

Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so and did during and in relation to the offense, use and carry a deadly and dangerous weapon and firearm.

**I) Motion to Dismiss under Rule 12(b)(1), *with Prejudice* under Rule 5(f).**

On June 16, 2021, in Count One of the Indictment, counsel for the government alleged to a Grand Jury that the Vice President-elect was in the Capitol or its grounds on January 6, 2021, at the time when Mr. Ibrahim is alleged to have been in this area during the protest. Yet this is entirely false. The Vice President-elect was not at the Capitol at any time material.

Federal Rule of Criminal Procedure 12(b)(1) provides that a defendant may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." As such, the issue of the government's misrepresentation about the presence of the Vice President-elect in the allegedly restricted area of the Capitol and its grounds, an undisputed fact, can be addressed through a 12(b)(1) motion. See *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005); *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted.").

"The day of the mob attack on the Capitol, Harris had received an intelligence briefing in the morning and had not returned to the Senate before rioters broke in. She was kept away from

the Capitol until the facility was secured," published The Washington Post on **Jan. 14, 2021**.[1] Days after January 6, 2021, it was publicly known that Kamala Harris, the Vice President-elect, was not in the Capitol when the events charged against January 6 defendants had transpired. Yet, five months after this had been publicly known, on **June 16, 2021**, the government had the audacity to falsely allege to a grand jury that Mr. Ibrahim and the Vice President-elect were in a restricted area simultaneously.

      Months later, the government admitted on the record that the allegation that the Vice President-elect was on Capitol Grounds at the time that January 6 protesters were present is **false**. The truth was first acknowledged by the government orally, in a January 6 prosecution, at the sentencing hearing for defendant Eric Torrens, on October 29, 2021. "After Chief Judge Beryl Howell said Torrens' actions contributed to the disorder that prompted Pence and Harris to be evacuated from the Senate chamber, Assistant U.S. Attorney Jamie Carter chimed in to say that the government had 'recently learned' that Harris was not actually present when the Capitol was breached," reported Politico.[2] A few days later, the government put the truth in writing, in a government response briefing filed in another January 6 prosecution, albeit in a footnote. See *United*

> **POLITICO**
>
> Another prosecutor disclosed the mistake in court last week at a sentencing hearing for Eric Torrens. After Chief Judge Beryl Howell said Torrens' actions contributed to the disorder that prompted Pence and Harris to be evacuated from the Senate chamber, Assistant U.S. Attorney Jamie Carter chimed in to say that the government had "recently learned" that Harris was not actually present when the Capitol was breached.

---

[1] Chelsea Janes, *For friends and allies of Kamala D. Harris, deadly Capitol attacks prompt fresh fears*, THE WASHINGTON POST (Jan. 14, 2021), https://www.washingtonpost.com/politics/harris-fears-safety/2021/01/13/bbd3d31a-54ff-11eb- a817-e5e7f8a406d6_story.html. See also Noah Bierman, *Kamala Harris says nation will 'find a moment' to celebrate inauguration amid pandemic grief*, LOS ANGELES TIMES (Jan. 17, 2021), https://www.latimes.com/politics/story/2021-01-17/kamala- harris-speaks-with-the-times ("[Vice President-elect Harris] said she had been at the Capitol earlier that day for a meeting of the Senate Intelligence Committee and was working elsewhere in Washington when she was evacuated. She said she watched the mob enter the Capitol on television from a secure location . . . .").

[2] Kyle Cheney, Josh Gerstein, and Christopher Cadelago, *DOJ error highlights Jan. 6 mystery: Where was Kamala Harris during the attack?*, Politico (Nov. 4, 2021) https://www.politico.com/news/2021/11/04/doj-kamala-harris-jan-6-519505.

*States v. John Andries*, 1:21-cr-00093-RC, ECF No. 31 (D.D.C. November 2, 2021).

It is now 15 months post indictment, August of 2022. The government has not produced any exculpatory evidence to Mr. Ibrahim regarding their misrepresentation in his Indictment of the Vice President-elect's whereabouts on January 6, 2021. The defense learned about this falsity through independent sources. As such, 15 months after his indictment and almost one year after the government corrected this falsity in other January 6 prosecutions, the government has failed to do anything regarding their lie to a grand jury in Mr. Ibrahim's Indictment.

Back in February, in the case of January 6 defendant Nicholas Rodean, Judge McFadden chastised the government for correcting the indictments of other January 6 defendants but neglecting to correct Mr. Rodean's indictment.

> But the Government has a problem. The superseding indictment says that then Vice President-elect Harris was at the Capitol when Rodean entered it. See Superseding Indictment at 2–3, ECF No. 12 (Counts Three, Four, and Five). She was not… recognizing that fact, the Government has, in other cases, filed a superseding indictment to correct its error… Yet here, over a year after first charging Rodean under § 1752(a) and nearly a year after misleading the grand jury about the whereabouts of the Vice President-elect, the Government has still not explained or remedied its mistake… This all suggests a certain lack of attention and care in the prosecution of this case, undermining any confidence the Court can have in the Government's representations.

*United States v. Nicholas Rodean*, 1:21-cr-00057-TNM, ECF No. 36 (D.D.C. February 2, 2022) (denying the government's request to proffer witness testimony as a result of the Court's loss of confidence in the government's representations). It is now August of 2022 and Mr. Ibrahim's Indictment boasts the verifiably false fact that the Vice President-elect was on the grounds of the Capitol during the January 6 protest.

Pursuant to the Due Process Protections Act, Rule 5(f) of the Federal Rules of Criminal Procedure, and the Minute Order dated September 8, 2021, the government is under obligation to

produce all exculpatory evidence to the defendant. Failure by the government to comply with their legal obligations to the defendant "could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances." See Minute Order, dated September 8, 2021.

The whereabouts of the Vice President-elect are an element of the offense charged against Mr. Ibrahim which the government must prove to a jury beyond a reasonable doubt. See 18 U.S.C. § 1752(c)(1)(B) ("the term 'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area… of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting"). The government claimed in the Indictment that Ms. Harris *was* in Capitol or its grounds. Yet, the government has failed to produce exculpatory evidence to the defendant related to the whereabouts of the Vice President-elect, evidence proving that the allegation in the Indictment is entirely false. The government could have corrected Mr. Ibrahim's Indictment but the government has failed to do so in a timely manner. The withheld evidence directly affects an element of the offense and negated the defendant's culpability under the indicted statute.

In this case, not only did the government lie to the Grand Jury, but the government failed to correct this misrepresentation for the duration of at least 15 months after putting it on the record, *and then* failed to produce exculpatory evidence to the defense regarding this element of the Indictment even though charges against Mr. Ibrahim had been pending for 15 months. This misrepresentation and the concealment that followed show a blatent disregard for the defendant's due process rights and a blatant disregard for the truth by the Department of Justice. As a

reminder, the prosecutor owes a duty not just to the nation but also to the defendant. See *Berger v. United States*, 295 U.S. 78, 88 (1935) (the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done."); *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) ("[T]he obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations") (citing ABA Model Rule of Professional Conduct 3.8(d) (2008)); *see also* 28 U.S.C. § 530B (binding federal prosecutors to state ethics rules).

Dismissal of the Indictment under Fed. R. Crim. P. 12(b)(1) is appropriate but *it is not enough*. Dismissal without sanctions and without prejudice allows the government's conduct to go unchecked and unpunished; it allows the Department of Justice to operate untruthfully and unfaithfully without consequence.

The Due Process Protections Act was signed into law on October 21, 2020 (ironically for this case, it was signed into law by President Trump). Sanctions under this Act, under the new Rule 5(f), and the Minute Order, are appropriate. Under the circumstances of this case, a tailored, moderate sanction would be the dismissal of Count One *with prejudice*. As Judge McFadden aptly implied in *United States v. Rodean*, the government cannot be trusted. As the government has demonstrated in the case of Mr. Ibrahim, Judge McFadden could not have been more correct. If in February of 2022 the government's failure to correct the veracity of an indictment was considered suspect, then an additional six months on top of that has to amount to a wanton disregard for the truth and for the Fifth Amendment's due process clause. After all, this misrepresentation to the Grand Jury is not in isolation in this case — the government also lied to

the grand jury about Mr. Ibrahim's presence in Washington DC on March 15, 2021, knowing that he was in California on that date. *See Defendant's Motion to Dismiss Count Four of the Indictment*.

**II) Motion to Dismiss under Rule 12(b)(3)(B)**

In Count One of the Indictment, the government alleges that Mr. Ibrahim "during and in relation to the offense, use[d] and carr[ied] a deadly and dangerous weapon and firearm." The government regurgitates the words of the statute but fails to notify the defendant of the facts on which the government bases this allegation, failing to notify the defendant with specificity and of the nature and cause of the accusations against him in violation of his Sixth Amendment's "nature and cause" clause. The defendant, therefore, moves to dismiss Count One pursuant to Fed. R. Crim. P. 12(b)(3)(B).

While the indicted statute 18 U.S.C. 1752 in Count One is rarely charged, the language used in the statute is not new to federal jurisprudence. Terminology about "use and carry" of a firearm "during and in relation to" an offense is found in other federal criminal statutes and has been defined by the Supreme Court. See *Smith v. United States*, 508 U.S. 223 (1993); *Bailey v. United States*, 516 U.S. 137 (1995); *Muscarello v. United States*, 524 U.S. 125 (1998); *United States v. Davis*, 139 S. Ct. 2319 (2019).

The language of "use and carry" of a firearm or dangerous weapon "during and in relation to" an offense is not boilerplate; it has particularized applicability to each case and must be defined with precision in the indictment, with factual specificity that explains the nature of the firearm or other type of deadly weapon, and the relation of this weapon or firearm, use or carry,

to the offense charged, so that the defendant can be put on notice of the exact nature and charge against him. The government, in this case, has failed to notify the defendant about the nature and cause of the "use and carry" of a weapon or firearm "during and in relation to" the alleged offense. What did the defendant do to be accused of using or carrying a weapon or firearm during and in relation to a violation of 18 U.S.C. 1752(a)(1)? What did he do with the weapon or firearm during and in relation to this alleged trespass? How does a weapon or firearm relate at all whatsoever to the alleged trespass? After all, incidental weapon or firearm possession is not criminalized by this statute, only use or carry "during and in relation to the offense." 18 U.S.C. § 1752. Moreover, the government does not even specify the alleged weapon or firearm that is charged in the offense — technically leaving open for itself an opportunity to present evidence of any weapon or firearm at trial. *See e.g., United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991).

In reviewing identical statutory language, the Supreme Court held that to prove that a defendant "used" a firearm during *and* in relation to an offense, "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey v. United States*, 516 U.S. 137, 143 (1995). And, "[t]he limiting phrase 'during and in relation to' [serves to] prevent misuse of the statute to penalize those whose conduct does not create the risks of harm at which the statute aims." *Muscarello v. United States*, 524 U.S. 125, 139 (1998). Moreover:

> The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the [charged] crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under [the charged code section] for committing a [charged] offense "while in possession of a

firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the [alleged] offense.

*Smith v. United States*, 508 U.S. 223, 238 (1993) (internal and subsequent citations omitted).

Without stating in the Indictment *how or under what fact pattern* the firearm was an operative factor in the alleged trespassing in a restricted area, the government has not notified Mr. Ibrahim of the nature and cause of the charge against him. Stated differently, without stating in the Indictment how the use or possession of a weapon or firearm relates to the alleged offense, the government fails to separate conduct directly related to the indictment from a mere weapon or firearm possession, which is not prohibited by this statute. The Indictment does not distinguish a fact pattern that alleges criminal behavior, as opposed to a coincidence or a possession independent of the charged trespass offense. The Indictment does not even allege a description or name of the alleged weapon or firearm. The Indictment does not state the government's factual accusation of *how* the weapon or firearm facilitated the charged offense of trespass, even though this is an element of the offense that the government will need to prove at trial beyond a reasonable doubt. By reciting the language of the statute while failing to state a fact pattern the indictment fails to notify the defendant of the true nature and cause of the government's case against him.

Reciting the operative words of a statute in an indictment is not sufficient when it allows the government to formulate a favorable fact pattern for a trial jury that has not been prescreened and approved by a grand jury. This is why specificity is an indispensable component of an indictment. The indictment must contain the elements of the offense charged, fairly inform the defendant of the charge against which he must defend, and enable the defendant to plead an

acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). While the language of the statute may be used in the general description of the offense, it "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id*. at 117-18. A "defendant can only be prosecuted for offenses that a grand jury has actually passed up on." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). "Dismissal of an indictment is appropriate when it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014); *United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004) (overturning conviction and dismissing an indictment for failing state an essential element of the offense).

Moreover, specificity is necessary where a statute only criminalizes some conduct, under some circumstances. For example, an indictment alleging failure to answer "questions which were pertinent to the question then under inquiry" by a congressional subcommittee, in violation of 2 U.S.C. § 192, was insufficient because it did not specify the particular subject under investigation. *Russell v. United States*, 369 U.S. 749, 753-55 (1962). "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."*Id*. at 764; see also *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (noting that an indictment needs to "achieve the requisite degree of precision" and holding that an indictment is insufficient as a matter of law when "it describes the offense only in impermissibly broad and categorical terms").

Most importantly, the government owes a constitutional duty to a defendant in an indictment. The Fifth Amendment guarantees that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and the Sixth Amendment guarantees that a person accused of a crime shall "be informed of the nature and cause of the accusation." U.S. Const. Amend. V, VI. A valid indictment "preserves the Fifth Amendment's protections against abusive criminal charging practice." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). This means that a defendant "shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense." *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946).

In this case, the Indictment simply repeats the language of the criminal statute, describing the offense only in impermissibly broad and categorical terms. Mr. Ibrahim is left unnotified about the exact nature and cause of the charge against him, in violation of his Fifth and Sixth Amendment rights. As such, Count One should be dismissed as violative of his constitutional rights and pursuant to Fed. R. Crim. P. 12(b)(3)(B).

## III. Conclusion

For all of the reasons enumerated herein, any of which would independently suffice, the defense asks this court to dismiss Count One of the indictment.

Respectfully submitted,

By Counsel:


_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com


**CERTIFICATE OF SERVICE FOR CM/ECF**

    I hereby certify that on August 18, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.