UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| V. ) | CASE NO: 1:21-CR-496 |
| ) | |
| **MARK IBRAHIM,** ) | **REDACTED** |
| ) | |
| DEFENDANT. ) | |

**MOTION TO DISMISS COUNT FOUR OF THE INDICTMENT**

Defendant moves to dismiss Count Four of the Indictment for improper venue pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i), for violation of his Sixth Amendment right to be notified of the "nature and cause" of the accusations against him, and for lack of specificity and failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B).

In Count Four of the Indictment, the government has alleged that:

On or about March 15, 2021, **within the District of Columbia** and elsewhere, MARK S. IBRAHIM, did willfully and knowingly make **materially false**, fictitious, and fraudulent statements and representations in **a criminal matter** in the District of Columbia within the jurisdiction of the executive branch of the Government of the United States, by stating to a Special Agent of the Office of the Inspector General that he did not knowingly expose his firearm and DEA badge on the Grounds of the United States Capitol Building on January 6, 2021, in the District of Columbia. Specifically, MARK S. IBRAHIM stated "I had my creds. I had my firearm, and my badge on me ... But never exposed ... Not that I know of." The statements and representations were false because, as MARK S. IBRAHIM then and there knew, he did expose his firearm and DEA badge while on the grounds of the United States Capitol Building on January 6, 2021, in the District of Columbia.

[Emphasis added.]

**I) Background**

On January 6, 2021, Mark Ibrahim was employed by the United States Drug Enforcement Administration as a federal law enforcement officer. While off-duty, Mr. Ibrahim attended the conservative political protest in Washington DC. Mr. Ibrahim never entered the Capitol Building.

Mark Ibrahim participated in a voluntary interview on March 15, 2021, with federal investigator SA Higley. The interview was conducted digitally, over Zoom conferencing. Agent Higley was in Arlington, Virginia during the conference. Mr. Ibrahim was in California.

According to a transcript from this interview, the following conversation took place:

```
18     MR. IBRAHIM:  I am a big fan of
19  constitutional rights, and freedom of speech.
20     MR. HIGLEY:  Okay.  And then, what, sort
21  of, let's call it protective equipment did you
22  bring with you? You bring your DEA creds?
23     MR. IBRAHIM:  I did.  I had my creds.  I
24  had my firearm, and my badge on me.
25     MR. HIGLEY:  Okay.
 1     MR. IBRAHIM:   But never exposed.
 2     MR. HIGLEY:  Okay.
 3     MR. IBRAHIM:   Not that I know of.
 4     MR. HIGLEY:  That's your DEA-issued Glock,
 5  whatever it is, the 19 or something?
 6     MR. IBRAHIM:  Yes.
```

From this conversation, the government alleged that the select words 'I had my creds. I had my firearm, and my badge on me ... But never exposed ... Not that I know of" were false and amount to a felonious crime under 18 U.S.C. § 1001(a)(2), because, the government claims, Mr.

Ibrahim did know that "he did expose his firearm and DEA badge while on the grounds of the United States Capitol Building." In support of this claim, the government shows a digitally zoomed photograph of Mr. Ibrahim with a holstered firearm that is concealed in Mr. Ibrahim's waistband and a visible badge next to it. Mr. Ibrahim is not charged for the act of "expos[ing] his firearm and DEA badge while on the grounds of the United States Capitol Building," nor does such a charge exist.

**II) Motion to Dismiss under Rule 12(b)(3)(A)(i) — Improper Venue**

Count Four of the Indictment alleges that on March 15, 2021, the defendant made a statement "within" the District of Columbia. This is false. The Defendant was in California on March 15, 2021. The government agent was in Virginia. No party to the conversation was present in the District of Columbia. The evidence presented to the Grand Jury on this element corroborates these facts.

In presenting his case to the Grand Jury, the prosecutor in this matter, Mr. Peterson, asked SA Jason Higley, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" To which SA Higley responded, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," See Defense Exhibit A.[1] This conversation, via Zoom video chat, is the subject of Count Four of the Indictment. However, contrary to the allegation printed in the Indictment, Mr. Ibrahim was not present in Washington DC on March 15, 2021, nor was the investigating agent. How did this fact make its way into the Indictment? After presenting to the Grand Jury evidence ▓▓▓▓▓

---

[1] Quotes from the Grand Jury transcript are redacted for public filings, with exhibits filed under seal, pursuant to Order of this court signed by Judge Timothy J. Kelly on 7/4/2022.

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████ SA Higley simply responded, "███" Defense Exhibit B. As we know from SA Higley's prior testimony, this is false.

In a twist of irony, Mr. Peterson and SA Higley, in attempting to indict Mr. Ibrahim for making a false statement to the government, managed to make a false statement to the Grand Jury and indicted Mr. Ibrahim under a false premise. (This is not the only false statement made to the Grand Juty. See *Motion to Dismiss Count One of the Indictment*.)

Aside from the clearly false statement presented by Mr. Petersen to the Grand Jury and affirmed under oath by SA Higley, the District of Columbia is not the proper venue for a statement that was made in California.

Rule 12(b) of the Federal Rules of Criminal Procedure allows the defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." See also *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005); *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). The issue being raised by the defense is venue, specifically carved out in Rule 12(b)(3)(A)(i) for the defendant to raise before trial. The simple facts for this court to review in the determination of proper venue are on the record and are not disputed by either party: Mr. Ibrahim made the alleged statement on March 15, 2021, while he was in California, over Zoom, while speaking with SA Higley, who was located in Arlington, Virginia. See Defense Exhibit A. The issue of venue in this case can and should be

reviewed and resolved prior to trial. *See United States v. EL-SAADI*, 549 F. Supp. 3d 148 (D.C. 2021); see also *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994)(dismissal of an indictment upon defendant presenting undisputed evidence in support of his motion that he was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense). In fact, forcing a defendant into a trial in the District of Columbia, on Count Four of the Indictment, would violate his constitutional rights.

Venue is a principle of constitutional genesis: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…." U.S. Const. Amend. VI. Furthermore, Article III provides that "the Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Federal Rules of Criminal Procedure reinforce the constitutional guarantee that a defendant will be tried in the state and district where the charged offense was allegedly committed. Fed. R. Crim. P. 18.

Venue is determined by first identifying the essential conduct elements of the statute in question and then determining the location where acts constituting the offense conduct took place. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999). As such, facts outside the four corners of an indictment need to be considered in determining whether venue is proper in the district where the indictment has been filed.

For a prosecution under 18 U.S.C. § 1001(a), venue is proper "where the defendant makes the false statement." *United States v. Smith*, 641 F.3d 1200 (10th Cir. 2011) (holding that for a prosecution under 18 U.S.C. § 1001(a)(2) the *locus delecti* is where the defendant makes

the false statement); *United States v. John*, 477 F. App'x. 570, 572 (11th Cir. 2012) (for a prosecution under 18 U.S.C. § 1001(a) "venue is proper only in the district or districts where the defendant made the false statement"). But see *United States v. Coplan*, 703 F.3d 46, 79-80 (2d Cir. 2012) (discussing venue for 18 U.S.C. § 1001 as following documents on which false statements are written and extending this rule to a deposition transcript was reviewed and discussed by government officials in connection with the ongoing investigation in another venue); *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329-30 (4th Cir. 2012) (implementing a "where those effects were felt" test utilized in the Fourth Circuit); *United States v. Ringer*, 300 F.3d 788, 792 (7th Cir. 2002) (venue proper where materiality can be proven).

There is a circuit split as to whether 18 U.S.C. § 1001 should be subjected to an "effects-based" venue analysis as opposed to a strict "essential conduct elements" analysis as outlined in *Rodriguez-Moreno*, 526 U.S. 275. The Supreme Court's essential conduct elements analysis under *Rodriguez-Moreno* looks at the defendant's conduct and where the defendant's acts constituting unlawful conduct took place. The effects-based venue analysis looks at the victim and where the victim felt the impact of the defendant's conduct.

The Constitution specifically guarantees a defendant the right to be tried where the alleged crime was committed, not where the victim felt the effects. The effects-based venue analysis is inconsistent with the Supreme Court's holding in *Rodriguez-Moreno* and it tramples on a defendant's constitutional rights.

Venue is a right of the defendant under U.S. Const. Amend. VI, not a convenience that courts can just bestow upon the government. "The United States Constitution, in two different places, guarantees a defendant the right to be prosecuted in the district where the alleged offense

was committed. See U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI." *United States v. John*, 477 F. App'x. 570 (11th Cir. 2012). "We believe this right to be tried where one allegedly did wrong is an important one for defendants." *Id.*

> Generally, "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Cabrales*, 524 U.S. at 6-7, 118 S.Ct. 1772 (internal quotation marks and citation omitted). The terms of the statute dictate the nature and acts that constitute a crime. See, e.g., *United States v. Ryan*, 894 F.2d 355, 360 (10th Cir. 1990). While not an exclusive test, it is often helpful to look to the verb or verbs used in the criminal statute to determine where the crime was committed. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999).
>
> Title 18 U.S.C. § 1001(a)(2) imposes criminal punishment on "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... *makes* any materially false, fictitious, or fraudulent statement or representation...." 18 U.S.C. § 1001(a)(2) (emphasis added). The statute does not contain a venue clause, nor is there any language suggesting any "essential conduct element" other than making a false statement. See *Rodriguez-Moreno*, 526 U.S. at 280, 119 S.Ct. 1239. Therefore, the *locus delecti* is where the defendant makes the false statement…
>
> … We decline to adopt this "substantial contacts" test. The Constitution and Rule 18 are clear: a crime must be prosecuted in the district where it was committed. See U.S. CONST. art. III, § 2, cl. 3; Fed. R.Crim.P. 18.

*United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011).

The D.C. Circuit has not yet reviewed the issue of venue with respect to 18 U.S.C. § 1001. Nonetheless, the D.C. Circuit has rejected an effects-based test for other offenses when venue in DC was attempted to be established through acts that occurred in another district. See *United States v. White*, 887 F.2d 267, 272 (D.C. Cir. 1989) ("[U]nder the controlling precedent of this circuit, venue for bribery lies only in a district in which the defendant committed unlawful acts and is not proper in a district where only the effects of the crime occur."); *United States v. Swann*, 441 F.2d 1054, 1054-55 (D.C. Cir. 1971) (finding that alleged tampering with a witness

in a District of Columbia case was not sufficient to establish venue when acts constituting tampering occurred in Maryland); *United States v. Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) (finding that venue was improper because there was no evidence that defendant had committed any act in the district); see also *United States v. Trie*, 21 F. Supp. 2d 7, 18 (D.D.C. 1998) (holding that venue for obstruction of justice exists only in the district in which the acts constituting the offense took place); *United States v. Moore*, 582 F. Supp. 1575, 1577 (D.D.C. 1984) (dismissal of a case in which defendant, in Maryland, allegedly threatened a witness in the District of Columbia in violation of 18 U.S.C. § 1512); *United States v. Gamble*, Criminal No. 19-348 (CKK) (D.C. July 2, 2020) (rejecting the effects-based test and implementing an essential conduct elements test to dismiss the indictment). The precedent in the D.C. Circuit, therefore, is consistent with the 10th Circuit and 11th Circuit on the issue of analyzing the appropriateness of venue in the District. As such, Mr. Ibrahim cannot be tried for an offense in the District of Columbia when the acts constituting the alleged offense occurred in California.

The defendant committed no acts in the District of Columbia, rendering this district improper for trial on the charge of 18 U.S.C. § 1001(a)(2). The statements alleged in the Indictment were made in California. The proper and constitutional venue for a trial on statements made in California is in California. The defendant, therefore, moves to dismiss Count Four of the Indictment under Rule 12(b)(3)(A)(i) for improper venue in the District of Columbia.

**III) Motion to Dismiss Pursuant to Rule 12(b)(3)(B) for Vagueness and for Failure to State an Offense**

In relevant part, 18 U.S.C. § 1001(a)(2) states that, "[e]xcept as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully… makes any materially false, fictitious, or fraudulent statement or representation… shall be fined under this title, imprisoned not more than 5 years…"

Mark Ibrahim was indicted under 18 U.S.C. § 1001(a)(2) for making "**materially** false, fictitious, and fraudulent statements and representations in **a criminal matter** in the District of Columbia… Specifically, MARK S. IBRAHIM stated 'I had my creds. I had my firearm, and my badge on me ... But never exposed ... Not that I know of.' The statements and representations were false because, as MARK S. IBRAHIM then and there knew, he did expose his firearm and DEA badge while on the grounds of the United States Capitol Building on January 6, 2021, in the District of Columbia." (Emphasis added.)

What was the "criminal matter" in which the statement was made? Who was being investigated? For what? What was the materiality of the alleged false statement? How did the statement relate to the "criminal matter"? What exactly will the defendant have to defend at trial? Which future prosecutions are barred?

The Indictment alleges that the false statement took place "in a criminal matter" but does not specify the nature of the matter. Furthermore, the indictment fails to specify how the statement was material to this elusive criminal matter.

The Supreme Court defines materiality with respect to a charge under 18 U.S.C. § 1001 as having "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U. S. 759, 770

(1988); *United States v. Gaudin*, 515 U.S. 506, 519 (1995); see also *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010). Since one of the elements in a prosecution under 18 U.S.C. § 1001 is materiality, the defendant has the right to have the jury decide whether the alleged statement was material to the government matter in which the statement was made. *Gaudin*, 515 U.S. at 511. Moreover, the materiality must have a sufficient nexus to this matter. See *United States v. Facchini*, 874 F.2d 638, 643 (9th Cir. 1989) (noting that a "[false] statement must . . . be capable of having some non-trivial effect on a federal agency"). As such, the government's facts constituting materiality and its relevance to the particular alleged matter must be pleaded in the Indictment so that the defendant is put on notice of the complete charge against him. After all, immaterial statements, even misrepresentations, do not give rise to criminal liability. See, e.g., *United States v. Alvarez*, 132 S.Ct. 2537 (2012).

In the case against Mr. Ibrahim, not only are facts constituting materiality missing from the Indictment, but the government did not even bother to present evidence of materiality to the Grand Jury. As such, not only did the government not sufficiently specify a criminal offense, but the government failed to allege a criminal offense altogether.

Compare the Indictment against Mr. Ibrahim with indictments filed in this District against Mr. Michael Sussman and Mr. Michael Flynn for offenses under the same code section. See Case 1:21-cr-00582-CRC, Document 1, Filed 09/16/21;  Case 1:17-cr-00232-RC, Document 4, Filed 12/01/17. Aside from specifying the exact matter in which the allegedly false statement was made, the indictments also plead materiality with specificity.

Specificity is an indispensable component of an indictment. The indictment must contain the elements of the offense charged, fairly inform the defendant of the charge against which he

must defend, and enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). While the language of the statute may be used in the general description of the offense, it "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id*. at 117-18. A "defendant can only be prosecuted for offenses that a grand jury has actually passed up on." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). "Dismissal of an indictment is appropriate when it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014).

    Moreover, specificity is necessary where a statute only criminalizes some statements, under some circumstances. For example, an indictment alleging failure to answer "questions which were pertinent to the question then under inquiry" by a congressional subcommittee, in violation of 2 U.S.C. § 192, was insufficient because it did not specify the particular subject under investigation. *Russell v. United States*, 369 U.S. 749, 753-55 (1962). "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."*Id*. at 764; see also *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (noting that an indictment needs to "achieve the requisite degree of precision" and holding that an indictment is insufficient as a matter of law when "it describes the offense only in impermissibly broad and categorical terms").

    In Mr. Ibrahim's case, the government failed to plead with sufficiency two elements of the offense, the materiality and the nature of the matter in which the statement was made. There

are thousands of criminal matters being investigated in the District of Columbia. Which "criminal matter" was the statement made in? What was the materiality of the misrepresentation to this criminal matter? The indictment fails to inform of all of this and leaves these theories open for the prosecutor to explore at trial. Simply pasting the word "materiality" into an indictment is insufficient to notify the defendant of the charge against him as a matter of law.

Without alleging the nature of the criminal matter and the materiality of the alleged falsification, the government fails to state a criminal offense. The government fails to notify the defendant of the nature and cause of the criminal accusations against him, preventing him from being able to defend himself at trial. On top of it all, as indicted, the offense portrayed is more akin to protected speech under the First Amendment, as opposed to a criminal act.

A lack of specificity in the indictment allows a defendant to be tried on a theory that the government creates *ex post facto*, at trial, one that was not explicitly approved by a Grand Jury. This violates a defendant's constitutional rights. *Ex parte Bain*, 121 U. S. 1 (1887); *Stirone v. United States*, 361 U.S. 212, 217 (1960) ("a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"); *United States v. Hillie,* 227 F. Supp. 3d 57, 69 (D.D.C. 2017) ("a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on"). Moreover, it would open the door to improper prosecutorial gamesmanship and trial by ambush, wherein the prosecutor could choose which "criminal matter" to present to the jury, and the prosecutor could choose which theory of materiality should accompany such a matter. See, e.g., *Bennett v. Commonwealth*, 236 Va. 448 (1988) ("Ambush, trickery, stealth, gamesmanship, one-upmanship, surprise have no legitimate role to play in a properly conducted trial.").

Most importantly, the government owes a constitutional duty to a defendant in the Indictment. The Fifth Amendment guarantees that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and the Sixth Amendment guarantees that a person accused of a crime shall "be informed of the nature and cause of the accusation." U.S. Const. Amend. V, VI. A valid indictment "preserves the Fifth Amendment's protections against abusive criminal charging practice." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). This means that a defendant "shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense." *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946). As discussed *supra*, the Indictment against Mr. Ibrahim leaves him uninformed of the "nature and cause" of the accusation against him.

In the present case, the Indictment violates Mr. Ibrahim's Sixth Amendment right to be notified of the "nature and cause" of the accusations against him, fails to state a criminal offense and fails to allege with specificity an offense under 18 U.S.C. § 1001(a)(2). The defendant, therefore, moves to dismiss Count Four of the Indictment as violative of his constitutional rights and pursuant to Rule 12(b)(3)(B)(iii) and Rule 12(b)(3)(B)(v) for lack of specificity and failure to state an offense.

## IV. Relief

For all of the reasons enumerated herein, any of which would independently suffice, the defense asks this court to dismiss Count Four of the Indictment.

Respectfully submitted,
By Counsel:

/s/
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on August 18, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/
Marina Medvin, Esq.