UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:21-cr-00496-TJK-1 |
| : | |
| MARK S. IBRAHIM : | |
| : | |
| Defendant. : | |

**OPPOSITION TO MOTION TO DISMISS THE INDICTMENT – VENUE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's Motion to Dismiss Count Four of the Indictment based upon his claim of (1) lack of venue and (2) that the statements were not material. See ECF No. (under seal), pg. 3 and 9 ("the indictment fails to specify how the statement was material to this elusive criminal matter").

Ibrahim is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. Specifically, Ibrahim is charged with violations of 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), 40 U.S.C. § 5104(d)(2)(F) (injuries to property), 40 U.S.C. § 5104(e)(1)(A)(i) (Firearms and Dangerous Weapons on Capitol Grounds), and 18 U.S.C. § 1001(a)(2) (False Statements and Representations). Ibrahim does not dispute that he was present on Capitol Grounds and Restricted Grounds armed with a deadly weapon, his DEA issued firearm. Ibrahim also concedes he made the statements that form the basis of the false statement charge. Rather, Ibrahim argues that he did not intentionally make a materially false, fictitious, and fraudulent statement or representation to the investigating agent and that, even if he did, venue is not proper in this District.

## FACTUAL BACKGROUND

On March 15, 2021, pursuant to an investigation being conducted by the Office of the Inspector General, United States Department of Justice, and the United States Attorney's Office for the District of Columbia, the investigating Special Agent (SA) conducted a voluntary interview with the defendant in the presence of his attorney, via video teleconference. The interview was recorded. The defendant was in California and participated via teleconference. The investigating SA conducted the interview from his office in Arlington, Virginia. The SA admonished the defendant that that the most important thing for him was not to lie in the interview. The SA started the interview as follows:

> . . . Could I get you to raise your right hand, please? Do you swear or affirm the statements you're about to make are the truth, the whole truth, and nothing but the truth?
>
> MR. IBRAHIM: I do.
>
> \*                    \*                    \*
>
> [SA]          And then, just a couple of warnings I like to give people. That, like, that the most important thing - and your Attorney will obviously reinforce this, or may have already - that the most important thing is that you not lie in this interview. You, you know, could be - as you know - you could be charged with lying to a Federal Agent, or obstructing the investigation. I know that's, like, not the best way to start an interview, but I feel like I need to put that on the record sometimes.

Interview of Mark S. Ibrahim, March 15, 2021. The defendant admitted to being at the U.S. Capitol on January 6, 2021 and acknowledged that he had his DEA credentials with him at the Capitol, as well as his DEA badge and firearm. The defendant denied that he displayed or exposed his DEA badge and firearm at the Capitol. Specifically, the defendant stated "I had my creds. I had my firearm, and my badge on me . . . But never exposed . . . Not that I know of." During his interview, the defendant acknowledged hearing the tear gas canisters going off—he

said he heard the booms.

Defendant was also aware that he was the subject of a criminal investigation, and that the events that day were criminal in nature. In his interview, defendant said:

> MR. IBRAHIM: I don't - and I adamantly reject the fact that it went violent. I hate the fact that it went violent. And that's part of the reason why I took my flag off the pole, and put it away, and that's part of the reason why I documented as much as I could, and that's why I made sure that [my friend], you know, like, I knew what [my friend] was there for. I knew that he was in contact with the FBI, and I wanted to make sure that these videos got to the right authorities.

Ibrahim interview, pg. 56-7.   Further:

> MR. IBRAHIM: I just would like to - am I a target of a criminal investigation?
>
> [SA]: At this time, you are referred to as a subject. A target is – and Gretchen can speak to this - is, like, a putative defendant. But because your conduct falls under the purview of potentially a Grand Jury investigation, we have you referred to as a subject. So, you are not exclusively a witness.
>
> MR. IBRAHIM: So, I am a subject of a criminal investigation?
>
> [SA]: Yes.

Ibrahim interview, pg. 59.

In his motion, defendant suggests that the government's evidence that defendant "knew" he exposed his firearm and badge is limited to "a digitally zoomed photograph of Mr. Ibrahim with a holstered firearm that is concealed in Mr. Ibrahim's waistband and a visible badge next to it."   Motion to Dismiss – Venue, pg. 15.   To the contrary, the government has produced in discovery at least two sets of "burst" photographs showing defendant reaching for his coat and pulling it back to expose his gun and badge:

3



After the interview, and before the case was presented to the grand jury, the SA forwarded the audio of the interview, as well as the transcript of the interview, to a cloud-based server that was accessible to the United States Attorney's Office in the District of Columbia. Prosecutors with the United States Attorney's Office, while being physically present in the District of Columbia, accessed the audio and transcript of the interview with the defendant, including his statements that form the basis of the 18 U.S.C. § 1001 charge. Thereafter, attorneys within the U.S. Attorney's Office discussed, and prepared documents, concerning the

1001 charge involving the defendant within the District of Columbia.

## ARGUMENT

**I.     The venue claim should be denied**

Defendant moves to strike Count 4 of the indictment based, in part, upon Federal Rule of Criminal Procedure 12(b)(3)(A)(i).   Congress did not expressly provide special venue provisions in 18 U.S.C. § 1001 cases.   *See United States v. Barsanti*, 943 F.2d 428, 434-35 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992).   Venue for false statements under § 1001 is proper in the district in which the false statements are made, filed, or ultimately submitted. *United States v. Stephenson*, 895 F.2d 867 (2d Cir. 1990); *United States v. Culuoso*, 461 F. Supp. 128 (S.D.N.Y. 1978).   *See also United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996) (a multi-jurisdiction offense may be prosecuted in any district in which such offense was begun, continued, or completed).   Except as otherwise mandated by statute, venue is proper in any district in which the offense was committed. Fed. R. Crim. P. 18.   Where the offense is of a continuing nature, venue is proper in any district where the acts constituting the offense were begun, continued or completed, unless otherwise provided by statute. 18 U.S.C. § 3237. Further, when a federal statute defining an offense does not specify how to determine where the crime was committed, "[t]he locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it."   *United States v. Lange*, 834 F.3d 58, 69 (2d Cir. 2016) (*quoting United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)).   Venue may lie in more than one place if "the acts constituting the crime and the nature of the crime charged implicate more than one location." *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985).

5

Moreover, although venue must be alleged in every Federal indictment, it is not an element of the charged offense. *United States v. Kaytso*, 868 F.2d 1020, 1021 (9th Cir. 1988).

Count Four charges the defendant with making a materially false statement in violation of 18 U.S.C. § 1001. Here, the defendant committed the alleged false statement offense "in more than one district." 18 U.S.C. § 3237(a). Under *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), determining the nature of a substantive offense for venue purposes requires examining the entire enabling statute. *Id.* at 280. Here, Section 1001 (a) (2) does not simply criminalize the making of false statements. Rather, it criminalizes the making of a "materially false" statement "in any matter within the jurisdiction of the executive, legislative, or judicial branch" of the federal government. In this case, the defendant's false statement constitutes a federal offense because it "ha[d] a natural tendency to influence" (and therefore was material to) the ongoing federal investigation in Washington, D.C. *Kungys v. United States*, 485 U.S. 759, 770 (1988).

The defendant therefore made false statements about events that transpired in the District of Columbia, and he made those statements to an agent as part of a federal investigation in the District of Columbia. It follows that the defendant's offense was "committed" or "continued," *see* § 3237(a), in the District of Columbia. That is the approach taken by the principal federal obstruction statute, which permits venue "in the district in which the official proceeding . . . was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." § l512(i). Although Section 1001 does not specify where venue is appropriate, it should be treated the same way: a false statement that is material to a federal proceeding (and thus falls within section 1001) may be prosecuted either where the statement was made or where

the affected proceeding is ongoing.

It follows that venue is proper in the district where the materially affected investigation was pending. *See United States v. Hsia*, 24 F. Supp. 2d 14, 22 (D.D.C. 1998) (noting that "venue in false statements cases is appropriate in any district to which the false statement ultimately is forwarded, even if by a person other than the defendant"). When, as in a prosecution under Section 1001, "materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt." *United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012) (citation omitted); *see also United States v. Oceanpro Indus. Ltd.*, 674 F.3d 323, 329–330 (4th Cir. 2012); *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) (in dicta); *United States v. Ringer*, 300 F.3d 788, 790–92 (7th Cir. 2002).

Although a minority of courts have limited venue in false statement cases to the jurisdiction in which the statement was made, *see, e.g.*, *United States v. Smith*, 641 F.3d 1200, 1208 (10th Cir. 2011), the majority view permitting prosecution in a jurisdiction in which the false statement materially affected the investigation(1) "adheres to the text of the statute," (2) recognizes that "Congress drew a line [in § 1001] between proscribed and permissible conduct . . . us[ing] the word 'materially,'" and (3) follows the Supreme Court's warning "not to 'rigidly' focus on a statute's verb 'to the exclusion of other relevant statutory language.'" *United States v. Brennan*, 452 F. Supp. 3d 225, 233 (E.D. PA 2020) (*quoting Rodriguez-Moreno*, 526 U.S. at 280. By contrast, the minority view on which the Defendant relies (1) "deviates from the text" of the statute, (2) "expands § 1001's scope beyond its textual limits" by "ignor[ing] th[e] line" Congress drew using "the word 'materially,'" and (3) "relies on precisely the kind of restrictive

7

'verb test' analysis that the Supreme Court has warned courts against using." *Id*. The Court should therefore find venue proper in the District of Columbia.

## II. The claim that the defendant's statements were not material should be denied

Defendant's vagueness-materiality claim mirrors to a large degree those arguments previously raised, and opposed, in the prior pleadings in this case. *See* ECF No. 21, pgs. 21-27 (Count 4 must be dismissed). The government references the defendant's prior pleading (ECF No. 21), and incorporates by reference its prior opposition. ECF No. 22.

Defendant's motion to dismiss Count Four (False Statement) is premature. Defendant seeks to challenge the sufficiency of the evidence pre-trial. An indictment "do[es] not have to set forth evidence or details of how a crime was committed." *United States v. Triumph Capital Grp., Inc.,* 260 F. Supp. 2d 444, 448 (D. Conn. 2002) (citing *United States v. Carrier*, 672 F.2d 300, 303-04 (2nd Cir. 1982)). Because an indictment is "tested by its allegations, not by whether the government can prove its case," it is "not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *Id*. (*quoting United States v. Alfonso,* 143 F.3d 772, 776-7 (2d Cir. 1998)) (citation omitted), *see also United States v. Kelly*, 462 F. Supp. 3d 191 (W.D. N.Y. 2020). Moreover, there is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context. *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005), *see also United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995). Instead, Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The

"general issue" has been defined as "evidence relevant to the question of guilt or innocence." *Yakou*, 428 F.3d at 246, *quoting United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987) (*citing United States v. Barletta*, 644 F.2d 50, 58 (1st Cir. 1981)).

Moreover, in ruling on a pretrial motion to dismiss the trial court must presume the truth of the facts alleged in the charging instrument, *United States v. Park*, 938 F.3d 354, 358 (D.C. Cir. 2019), and may accept any "undisputed facts" proffered by the government, *Yakou*, 428 F.3d at 247(explaining that "undisputed facts obviate . . . the need for [a] district court to make factual determinations properly reserved for a jury"); *see also United States v. Barnes*, 481 F. Supp. 3d 15 (D.D.C. 2020). Defendant cannot use Federal Rule of Criminal Procedure 12 to adjudicate the sufficiency of the evidence pre-trial. *See Yakou*, 428 F.3d at. Instead, the proper time to raise such an argument would be at the close of evidence at trial. See Fed. R. Crim. Proc. 29(a).

It is also curious that defendant cites to the *United States v. Michael Sussman*, 1:21-cr-00582-CRC case. The *Sussman* case undermines the defendant's arguments here. Like defendant, *Sussman* filed a motion to dismiss the 1001 indictment based upon his claim that the statements were not material. *See* Motion to Dismiss the Indictment for Failure to State an Offense, *United States v. Sussman*, No. 1:21-cr-00582 (Feb. 17, 2022) ECF No. 39. The government objected and discussed the issue of materiality in detail, and its lack of amenability to a pre-trial determination. ECF No. 44. In their motion, defendant Sussman made a point that the "false statement must concern a specific decision of a governmental agency and 'have 'a natural tendency to influence, or [be] capable of influencing, the decision.'" ECF No. 39, pg. 5-6. In rejecting defendant Sussman's motion to dismiss the 1001 charge, Judge Cooper reasoned:

9

> At the outset, Sussmann's argument that the materiality of his statement must be assessed only in relation to the FBI's decision to commence an investigation is based on an overly narrow conception of the applicable standard. He largely ignores the second part of the test: whether the statement could influence "any other function" of the agency. Applying that prong of the materiality standard, the D.C. Circuit has stated that "a 'lie distorting an investigation already in progress' also would run afoul of § 1001." *Moore*, 612 F.3d at 701 (*quoting United States v. Hansen*, 772 F.2d 940, 949 (D.C. Cir. 1985)). Sussmann seeks to cabin this holding to statements made during the course of an ongoing investigation, but the Court sees no basis for that bright-line divide. As the Special Counsel argues, it is at least possible that statements made to law enforcement prior to an investigation could materially influence the later trajectory of the investigation. Sussmann offers no legal authority to the contrary.

Opinion and Order, *United States v. Sussman*, No. 1:21-cr-00582 (Apr. 13, 2022) ECF No. 67.

Here, of course, defendant was being investigated for his conduct at the United States Capitol on January 6, 2021, and, specifically, his conduct on Capitol Grounds, as well as inside the Restricted perimeter. At the interview, defendant acknowledged his understanding that criminal conduct was taking place at the Capitol that day. He said:

> we had a follow up of me in my house, just talking about the day, and on that day, I described my absolute disgust and shame for the loss of life, and that people were violent towards law enforcement.

Ibrahim interview, pg. 54. As previously discussed, the defendant was also aware that he was the subject of a criminal investigation. Ibrahim interview, pg. 59. The SA was investigating whether defendant committed criminal offenses on January 6, 2021, and what offenses he potentially committed. The questions concerning whether, and under what circumstances, defendant was possessing a firearm was directly relevant to a criminal investigation. *See* 40 U.S.C. § 5104(e)(1)(A)(i) and 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A). The statements by defendant that day were material, but, nevertheless, the materiality is an issue for the finder of fact at trial. The motion should be denied.

WHEREFORE, the government respectfully requests that this Court deny Defendant's

motion to dismiss Count Four for improper venue and for lack of sufficient evidence to support a materiality claim.

                              Respectfully submitted,

                              MATTHEW M. GRAVES  
                              UNITED STATES ATTORNEY  
                              DC BAR NO. 481052

By:          /s/  
                              James D. Peterson  
                              Trial Attorney  
                              United States Department of Justice  
                              Special Assistant United States Attorney – D.C.  
                              VA Bar 35373  
                              1331 F Street N.W.  
                              6th Floor  
                              Washington, D.C. 20530  
                              (202) 353-0796  
                              James.d.peterson@usdoj.gov