# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:21-cr-00496-TJK-1** |
| | : | |
| | : | |
| **MARK S. IBRAHIM** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO THE MOTION TO DISMISS COUNT ONE OF THE INDICTMENT (ECF No. 47)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's Motion to Dismiss Count One of the Indictment based upon his claim that the "government deceived the Grand Jury as to the whereabouts of the Vice President-elect, neglected to notify defense counsel of the exculpatory evidence showing that the Vice President-elect was not present in the Capitol, and failed to correct the Indictment in a timely manner within 15 months following the indictment."

For the reasons set forth below, and in a parallel filing, the Court should strike the language referring to the "Vice President-elect" in Count One of the Indictment charging the defendant with a violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A). The Court should deny the defendant's motion to dismiss. There is no discovery violation, and the defendant has suffered no prejudice as a result of the inclusion of the language referring to the whereabouts of the Vice President-elect. The motion should be denied.

### Background

In 18 U.S.C. § 1752, Congress prohibited certain types of conduct in any "restricted building or grounds." As relevant here, Section 1752 defines a "restricted building and grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the

President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).  An individual violates Section 1752 by, among other things, "knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *United States v. Griffin*, No. 21-cr-92 (TNM), --- F.Supp.3d ---, 21 WL 27778557, at *3 (D.D.C. July 2, 2021) (cleaned up).  The list of individuals whom the United States Secret Service is authorized to protect includes the Vice President and the Vice President-elect.  18 U.S.C. § 3056(a)(1).

The indictment in this case alleges that the defendant violated Section 1752(a)(1) and (b)(1)(A) on January 6, 2021.  Specifically, Count One alleges that the defendant violated Section 1752(a)(1) when he "did knowingly enter and remain in or on restricted grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President *and Vice President-elect* were temporarily visiting, without lawful authority to do so and did during and in relation to the offense, use and carry a deadly and dangerous weapon and firearm."  ECF No. 7, at 1 (emphasis added).

Further investigation has shed light on the whereabouts of the Vice President and Vice President-elect during January 6, 2021.  *See* Exhibit A, Declaration of Sergeant Stephen T. James ("James Declaration"); Exhibit B, Declaration of Jason Jolly, Staff Assistant, United States Secret Service ("Jolly Declaration").  The Vice President left the Senate Chamber at 2:26 pm and entered a "secure location within the Capitol Complex" around 2:28 pm.  James Declaration, ¶ 4.  The Vice President remained at that secure location until he returned to the Senate Chamber around 6:29 pm.  *Id.* at ¶ 4-5.  The Capitol Complex refers to "the Capitol Building and Capitol Visitor Center," *id.* at ¶ 3, and was "entirely within the restricted perimeter" established around the Capitol

building and Grounds on January 6, 2021. *Id.* at ¶ 7. By contrast, the Vice President-elect, although present at the Capitol on the morning of January 6, had left and was planning to return to the Capitol until her travel there "was delayed when the Joint Session was interrupted by the riot." Jolly Declaration, ¶ 3. The Vice President-elect thus did not return to the Capitol until approximately 7 pm to participate in the Certification of the Electoral College vote. *Id.* at ¶ 4.

Based on these factual developments, the government has separately moved the Court to amend the charging language in Count One, which charges a violation of Section 1752. Specifically, the government requests that the Court amend the reference to "where the Vice President and Vice President-elect were temporarily visiting" to "where the Vice President was temporarily visiting" in Count One.

## I.    Argument

### A.    Amending an indictment

The Fifth Amendment of the Constitution requires that the prosecution of a criminal defendant facing a felony charge "be begun by indictment." *Stirone v. United States*, 361 U.S. 212, 215 (1960). Once an indictment has issued, that charge "may not be broadened through amendment except by the grand jury itself." *Id.* at 216. By contrast, where the indictment "fully and clearly" charges an offense's elements, no constitutional infirmity arises if that indictment "alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985). Thus, language in the indictment that is "unnecessary to and independent of" the offense's allegations "may normally be treated as 'a useless averment' that 'may be ignored.'" *Ibid.* (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)).

A court therefore has the authority "to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." *Miller*, 471 U.S. at 144; *see United*

*States v. Quinn*, 401 F. Supp. 2d 80, 90 (D.D.C. 2005) (granting government motion to strike from an indictment language that referred not to "essential elements" but instead to "different means by which the defendants committed an alleged offense (any one which alone could support a conviction)"); *see also United States v. Holland*, 117 F.3d 589, 594-95 (D.C. Cir. 1997) ("Paring down the conspiracy's time frame added no new charges to the indictment" and thus did not require re-submission to the grand jury). In *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989) (Greene, J.), the government sought to narrow a conspiracy charge by dropping all language referring to one object of the alleged scheme. *Id.* at 7. In granting that motion, Judge Greene concluded that striking language from an indictment was consistent with the Constitution because "(1) the indictment as so narrowed constitute[d] a completed criminal offense, and (2) the offense [wa]s contained in the indictment as originally returned." *Id.* at 9.

Here, after removal of the language that the government seeks to strike, the indictment continues to state viable offenses that have been in the charging document since the date of its return by the grand jury. In Count One, the key language on which the Section 1752 charge relies—that a person protected by the Secret Service was temporarily visiting a posted, cordoned-off, or otherwise restricted area within the Capitol—remains. The indictment issued by the grand jury identified the same protected person—the Vice President—on which the amended language relies. Deleting reference to the Vice President-elect "simply 'narrows' the scope of the charges, which 'adds nothing new to the grand jury's indictment and constitutes no impermissible broadening.'" *Quinn*, 401 F. Supp. 2d at 90 (quoting *Holland*, 117 F.3d at 595) (brackets from quotation omitted).

**B.      Defendant's dismissal claim lacks merit**

Defendant asks the Court to dismiss Count One with prejudice based on a "false statement" to the grand jury under Rule 5(f) of the Federal Rules of Criminal Procedure.  This claim lacks merit for several reasons.  First, Rule 5(f), which confirms the government's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), does not implicate information communicated to the grand jury.  Obligations under *Brady* and its progeny concern the government's duty to provide exculpatory information to a defendant, not correct mistakes or omissions to the grand jury.  For the reasons described above and in the government's parallel motion to strike, the government's error with respect to the Vice President-elect in no way undermines the grand jury's deliberations or the indictment's sufficiency.

Second, the fact that the Vice President-elect was in fact at the Capitol later in the day on January 6, alongside Section 1752's future tense language --"will be visiting" -- means that the evidence is arguably not exculpatory.  To be sure, the indictment did not charge the "will be" language, and the government has moved to strike reference to the Vice President-elect to avoid any potential confusion.  But that motion does not necessarily imply that the Vice President-elect's whereabouts was exculpatory.

Third, even assuming that information about the Vice President-elect's whereabouts was exculpatory, that information is not material.  As noted above (and in the parallel motion to strike), the Vice President was present throughout the relevant time period on January 6.  The defendant does not explain how he could or would use the information about the *Vice President-elect*'s whereabouts in his defense case to rebut evidence establishing the Vice President's presence within the restricted area on January 6.

Finally, the information about the Vice President-elect was and is known to the defendant well advance of trial and from a source other than the government.  As the defendant notes,

information revealing that the Vice President-elect was not present at the Capitol when it was breached was published in *The Washington Post* on January 14, 2021.  *See* ECF No. 47, pg. 3. The government does not suppress exculpatory information for purposes of *Brady* where the defendant was "aware of the essential facts enabling [him] to take advantage of [the] exculpatory evidence." *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006); *see also Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003) ("[T]here can be no suppression by the state of evidence already known by and available to the defendant prior to trial.").  The Court should therefore deny the defendant's motion.

> **C.    Defendant's "use and carry" and "during and in relation to" claim is premature and, in any event, lacks merit**

Defendant also asks the Court to dismiss Count One under Fed. R. Crim. P. 12(b)(3)(B) based upon the statutory language "use and carry" of a firearm and "during and in relation to" an offense.  Because the indictment adequately charged a violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), the defendant's motion should be denied.  Further, the defendant's conduct falls within the "use and carry" of a firearm and "during and in relation to" requirements, but that determination is an evidentiary sufficiency matter, not a pre-trial matter under Fed. R. Crim. P. 12(b)(3)(B). Accordingly, the motion is premature and should be denied.

Count One adequately charges a violation of Section 18 U.S.C. § 1752(a)(1) and (b)(1)(A).  An indictment satisfies the Federal Rules of Criminal Procedure if it contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (per curiam) (indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed").  An indictment complies with the Constitution where it "contains the elements of the offense charged and fairly informs a defendant of the

charge against which he must defend" and enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An "indictment parroting the language of a federal criminal statute is often sufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).

The Section 18 U.S.C. § 1752(a)(1) and (b) (1)(A) count in this case satisfies those requirements. Count One "echoes the operative statutory text"—alleging the defendant knowingly entered and remained in or on restricted grounds . . . without lawful authority to do so and did during and in relation to the offense, use and carry a deadly and dangerous weapon and firearm, "while also specifying the time and place of the offense," namely, January 6, 2021, in the District of Columbia. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018); App.55, 85-86, 444. An indictment's validity does not turn on "whether it could have been made more definite and certain," especially where, as here, the indictment identifies conduct that occurred on a single day in connection with an infamous attack on the U.S. Capitol such that it is "inconceivable" that "the defendants could possibly be misled as to the offense with which they st[and] charged." *United States v. Debrow*, 346 U.S. 374, 376, 378 (1953) (internal quotation marks omitted). In that respect, the Section 18 U.S.C. § 1752(a)(1) and (b) (1)(A) count here does not resemble the charges in *United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017), which the defendant invokes (ECF No. 47 at 10), and which involved allegations that the defendant merely "did something involving visual depictions of sexually explicit conduct of a minor . . . during periods of time that span two to three years," 227 F.Supp.3d at 72.

The defendant's attack on Count One here centers on the statutory language "use and carry" of a firearm and "during and in relation to" an offense in Section 18 U.S.C. § 1752(a)(1) and (b) (1)(A). Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request

that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis

added). Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on

sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence,"

*United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005), which has not occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance

in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."

*United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010). Whether the defendant used and

carried a firearm during and in relation to an offense in Section 18 U.S.C. § 1752(a)(1) and (b)

(1)(A) is a question for the factfinder.

Nevertheless, at least one Federal Court has considered whether an off-duty law-

enforcement officer's possession of a firearm satisfied the use and carry and during and in relation

to requirements of a federal criminal statute. *See United States v. Mack*, 572 Fed. Appx. 910 (11th

Cir. 2014). In that case, federal law enforcement engaged in a sting operation, and one of the co-

defendants recruited a local law-enforcement officer to provide protection for a purported drug

transaction. The officer-defendant was scheduled to work the day in question, but had requested

the day off. *Mack*, 572 Fed. Appx. at 913. On appeal, the defendant argued that "the firearm had

no role in the offense, and that, even if he carried a firearm, it was solely an incident of his wearing

his police uniform." *Mack*, 572 Fed. Appx. at 922. In rejecting the claim, the Eleventh Circuit

held:

> In order to show that a person carried a firearm "in relation to" a crime, the firearm must
> have "facilitate[d], or [had] the potential of facilitating, the drug trafficking offense"; "its
> presence or involvement cannot be the result of accident or coincidence." *United States v.*
> *Novaton*, 271F.3d 968, 1013 (11th Cir. 2001) and *United States v. Timmons*, 283 F.3d
> 1246, 1251 (11th Cir. 2002) (both *citing Smith v. United States*, 508 U.S. 223, 237-38, 113
> S. Ct. 2050, 2058-59, 124 L. Ed. 2d 138(1993)). "The phrase 'in relation to' is expansive."
> *Novaton* , 271 F.3d at 1013; *see also Timmons*, 283F.3d at 1251-52 (noting that the "during
> and in relation to" requirement "was intended to be a limiting phrase to 'prevent the misuse

of the statute [from] penaliz[ing] those whose conduct does not create the risks of harm [—i.e., combining drugs and guns—] at which the statute aims'")(*quoting Muscarello v. United States*, 524 U.S. 125, 132, 118 S. Ct. 1911, 1916, 141 L. Ed. 2d 111(1998)).

*Id., see also United States v. Wilson*, 884 F.2d 174 (5ᵗʰ Cir. 1989) (holding there was sufficient evidence to establish defendant carried a firearm "in relation to" a drug trafficking offense where the presence of the weapon and drugs was in close proximity, along with defendant's affirmative act of reaching for the weapon).  Here, of course, the defendant's use and carrying of his service firearm while not on duty was not an accident or coincidence.  Moreover, the harm to be avoided is the presence of firearms in areas where protected persons are present.   Defendant traveled to the District of Columbia with his friend to attend the rally, and then entered into the restricted, and marked, area of the Capitol grounds after he had armed himself with his service firearm earlier in the day.   In any event, this is an evidentiary matter for trial, and not subject to a pre-trial motion to dismiss.  The motion should be denied.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052


By:       /s/
James D. Peterson
Trial Attorney
United States Department of Justice
Special Assistant United States Attorney – D.C.
VA Bar 35373
1331 F Street N.W.
6th Floor
Washington, D.C. 20530
(202) 353-0796
James.d.peterson@usdoj.gov