UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:21-cr-00496-TJK-1 |
| : | |
| : | |
| MARK S. IBRAHIM : | |
| : | |
| Defendant. : | |

**SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS COUNT THREE**

Count Three charges defendant Mark Ibrahim with a violation of 40 U.S.C. § 5104(e)(1)(A)(i), which provides that an individual "may not carry on or have readily accessible" a firearm "on the [Capitol] Grounds or in any of the Capitol buildings." Properly construed, Section 5104(e)(1)(A) does not require proof that the individual knew he possessed a firearm or knew he was on Capitol grounds or in a Capitol building. Nonetheless, the government in this case is prepared to prove that Ibrahim knew that he possessed a firearm and knew that he was on the Capitol grounds. Dismissal of Count Three is unwarranted, and this Court should deny Ibrahim's motion.

**I.      Section 5104(e)(1)(A) is best interpreted to lack a scienter requirement.**

Section 5104(e)(1)(A) prohibits firearm possession on Capitol grounds. Specifically, it provides that "except as authorized by regulations of the Capitol Police Board," an individual "may not" engage in certain conduct on Capitol grounds or in any Capitol building. As relevant here, an individual "may not . . . carry on or have readily accessible" a "firearm." 40 U.S.C. § 5104(e)(1)(A)(i). Another prohibition within Section 5104(e)(1) provides that an individual "may not knowingly, with force and violence, enter or remain on the floor of either House of Congress." § 5104(e)(1)(B). Section 5104 also includes several offenses for "violent entry and disorderly conduct," which apply to individuals undertaking certain conduct "willfully and

knowingly." *See* § 5104(e)(2). The relevant penalty provision provides that an individual who "violat[es] or attempt[s] to commit a violation" of Section 5104(e)(1)(A) faces a maximum imprisonment term of five years. 40 U.S.C. § 5109(a).

Whether a criminal provision requires proof that a defendant acted knowingly—or with some other form of *mens rea*—is a "question of congressional intent." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (citing *Staples v. United States*, 511 U.S. 600, 605 (1994). The "starting place" in such an inquiry is the statutory text, *Staples*, 511 U.S. at 605, but also relevant is the pertinent legislative history, *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73-77 (1994); *Rehaif*, 139 S. Ct. at 2199. Courts generally apply a background "presumption in favor of 'scienter'" even where a statute is silent on any applicable *mens rea*, *Rehaif*, 139 S. Ct. at 2195, but that presumption yields where Congress has expressed a "contrary intent," *X-Citement Video*, 513 U.S. at 72; *see United States v. Balint*, 258 U.S. 250, 253-54 (1922).

Applying those principles, Section 5104(e)(1)(A) is best interpreted not to include a scienter requirement. Though not conclusive, the prohibition on carrying or having readily accessible a firearm on Capitol grounds lacks any express scienter requirement in the statute itself. Unlike the firearm prohibition at *Rehaif*, moreover, the relevant penalty provision, 40 U.S.C. § 5109(a), also lacks a scienter requirement. *See* 139 S. Ct. at 2195-96 (construing "knowingly" in the penalty provision, 18 U.S.C. § 924(a)(2), to reach a defendant's immigration status in 18 U.S.C. § 922(g)(5)); *see also X-Citement Video*, 513 U.S. at 68-70 (construing "knowingly" as used elsewhere in the same prohibition to reach the age of a performer even though doing so was not the "the most grammatical reading of the statute"). The relevant text here also differs from 26 U.S.C. § 5861(d), the firearm prohibition at issue in *Staples*, which was one of multiple firearms-

2

related prohibitions that did not include any *mens rea* requirement.  *See* 511 U.S. at 605 (noting that the Section 5861's text "provides little explicit guidance").  In proscribing certain conduct on Capitol Grounds and in the Capitol buildings, Section 5104 supplies several *mens rea* requirements: "knowingly and willfully," *see* § 5104(e)(2); "with intent to impede, disrupt, or disturb," § 5104(e)(2)(D); and "knowingly," § 5104(e)(1)(B), which latter provision is in the same sub-sub-section as Section 5104(e)(1)(A).  The canon of negative implication (or *expressio unius est exclusio alterius*) suggests that Congress consciously omitted a scienter or *mens rea* requirement for 5104(e)(1)(A).  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107-11 (2012).

   The relevant legislative history confirms that Congress intended the omission evident in Section 5104(e)(1)(A)'s text.  Congress enacted Section 5104(e)(1)(A) in 1967, adding it to pre-existing prohibitions against certain conduct on the Capitol grounds and in the Capitol building.  *See* ECF No. 54 at 4.  In the House of Representatives, where the bill including (what became) Section 5104(e)(1)(A) passed by a vote of 336-20, *see* 113 Cong. Rec. H29,398, Members actively discussed the absence of any scienter requirement.  *See generally id.* at H29,388-98.  One opponent, Representative Jerome R. Waldie, observed that that "possession of a firearm with no intent to use it for any improper purpose is a felony." *Id.* at H29,398.  Indeed, during consideration in the Senate of an earlier provision that included the term "knowingly," the reviewing committee "saw fit to remove the requirement that carrying the weapon be knowingly done."  *See* ECF No. 54-3 at 17 (Committee on Public Works, Safety of Capitol Buildings, Hearing Tr. 14 (Sep. 28, 1967)).  During testimony before the Senate Subcommittee on Public Buildings and Grounds, the Director of the American Civil Liberties Union commented on the absence of a *mens rea*

requirement. ECF No. 54-6 at 27 (Subcommittee on Public Buildings and Grounds, Hearing Tr. 27 (Sep. 21, 1967)). The Congress that enacted Section 5104(e)(1)(A) thus made a deliberate decision to enact the prohibition without a scienter requirement.

Declining to read a scienter requirement into Section 5104(e)(1)(A) is appropriate because the provision is part of a regulatory regime that ensures the safety of legislators and those around the Capitol. *See Rehaif*, 139 S. Ct. at 2197; *United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019) (describing that the area around the Capitol as "a potential stalking ground for anyone wishing to attack congressional staff and disrupt the operations of Congress"). To be sure, "possession of a gun can be entirely innocent." *Rehaif*, 139 S. Ct. at 2197. But although a violation of Section 5104(e)(1)(A) "result[s] in no direct or immediate injury to person or property," Congress was entitled to enact a strict liability prohibition on firearm possession to "minimize" the "danger or probability" of such injury or damage in the Capitol building and on Capitol grounds. *See Morissette v. United States*, 342 U.S. 246, 256 (1952). And while Section 5104(e)(1)(A) is a felony offense, its five-year statutory maximum is not as "harsh" as the ten-year felonies at issue in *Rehaif* and *Staples*. *See Rehaif*, 139 S. Ct. at 2197.

**II.     The government is prepared to prove that Ibrahim knew he possessed a firearm and knew that he was on Capitol grounds.**

Even though Section 5104(e)(1)(A), when properly interpreted, does not require proof that the defendant knew he possessed a firearm and knew that he was on Capitol grounds, the government is prepared to establish both in this case. *See Rehaif*, 139 S. Ct. at 2200 (holding that the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"). Accordingly, the government will accede to jury instructions here that would require the jury to find beyond a

reasonable doubt that Ibrahim knew he possessed a firearm and knew that he was on Capitol grounds.  *Cf. United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding a jury instruction requiring proof that a defendant acted with "consciousness of wrongdoing" to violate 18 U.S.C. § 1512(c)(2) because "if anything," that instruction "placed a higher burden of proof on the government than [S]ection 1512(c)(2) demands"); *United States v. Lonich*, 23 F.4th 881, 906 (9th Cir. 2022) (adopting same approach); *see also United States v. McIver*, 470 F.3d 550, 559 (4th Cir. 2006) (jury instructions not erroneous where they "benefitted [the defendant] by placing an even heavier burden on the government than otherwise required to establish criminal liability"); *United States v. Royal*, 100 F.3d 1019, 1027 (1st Cir. 1996) (jury instructions that "impose[] a higher burden on the government than the law requires" do not prejudice the defendant); *United States v. Florentino-Rosario*, 459 F.Supp.3d 345, 362 (D.P.R. 2020) (the defendant "benefited, or at least suffered no harm, from jury instructions that increased the government's burden").

      **III.**    **Even if the Section 5104(e)(1)(A) is interpreted to include a scienter requirement, dismissal of Count Three is unwarranted.**

Tracking the statutory language, Count Three alleges that Ibrahim violated Section 5104(e)(1)(A) by "carry[ing] on and hav[ing] readily accessible on the Grounds of the Capitol a firearm and a dangerous weapon." ECF No. 4 at 2. Even if the Court disagrees with the analysis in Part I, *supra*, and instead concludes that Section 5104(e)(1)(A) should be construed to require the government to prove scienter, dismissal of Count Three is nonetheless inappropriate.

An indictment satisfies the Federal Rules of Criminal Procedure if it contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (per curiam) (indictment need not inform a defendant "as to every means by which the prosecution hopes to

5

prove that the crime was committed"). An indictment complies with the Constitution where it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An "indictment parroting the language of a federal criminal statute is often sufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007). Count Three complies with those principles by putting Ibrahim on notice of the conduct with which he is charged and guarding against any double jeopardy concerns. *See* ECF No. 54 at 7-8.

But even if the allegation in Count Three were erroneous by failing to provide a scienter element, any instructional error before the grand jury would not provide a basis for dismissal. For one, courts "generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury," *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) (citation omitted), which Count Three functionally accomplishes by tracking Section 5104(e)(1)(A)'s statutory language. Furthermore, a district court may not dismiss an indictment based on errors in grand-jury proceedings absent a showing of prejudice. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Specifically, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring in the judgment)); *see United States v. Navarro*, 608 F.3d 529, 540 (9th Cir. 2010) (explaining that the "grave doubt" standard in *Nova Scotia* applies to grand-jury instructional error claim raised before a verdict). Ibrahim points to no way in which

6

any instructional error concerning the applicable scienter in Section —an instructional error that could be easily remedied before a petite jury—prejudices him or the preparation of his defense.

The treatment on remand in *X-Citement Video* is instructive. As noted above, the Supreme Court in that case reinterpreted the "knowingly" language of 18 U.S.C. § 2252(a) to "extend . . . to the age of the performers." *See* 513 U.S. at 77. On remand of that case, the Ninth Circuit held an indictment that tracked the statutory language was "not fatally defective" merely because it failed to specify the full reach of the term "knowingly," particularly where "defendants don't argue the language of their indictment would handicap them in any way in pleading double jeopardy" nor "point to any evidence the language of their indictment hindered their defense in the slightest." *United States* v. *X-Citement Video, Inc.*, 77 F.3d 491 (9th Cir. 1996) (unpublished). The same is true here.

## Conclusion

For the foregoing reasons and those in the government's principal opposition to Ibrahim's motion to dismiss Count Three (ECF No. 54), Ibrahim's motion to dismiss Count Three should be denied.

           Respectfully submitted,

           MATTHEW M. GRAVES
           UNITED STATES ATTORNEY
           DC BAR NO. 481052

By:     /s/
        James D. Peterson
        Trial Attorney
        United States Department of Justice
        Special Assistant United States Attorney – D.C.

VA Bar 35373
1331 F Street N.W.
6th Floor
Washington, D.C. 20530
(202) 353-0796
James.d.peterson@usdoj.gov

*/s/ James I. Pearce*
James I. Pearce
Appellate Counsel, Capitol Siege Section
United States Attorney's Office
NC Bar No. 44691
601 D Street NW
Washington, DC 20530
James.Pearce@usdoj.gov