UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No. 1:21-cr-00496-TJK-1 |
| : | |
| : | |
| **MARK S. IBRAHIM** : | |
| : | |
| **Defendant.** : | |

**OPPOSITION TO MOTION TO DISMISS THE INDICTMENT – CLAIM
OF LAWFUL AUTHORIZATION [ECF No. 61]**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Mark Ibrahim's Motion to Dismiss Count Three of the Indictment based upon his claim that he "had lawful authority, pursuant to regulations prescribed by the Capitol Police Board, to carry his firearm on Capitol Grounds." ECF No. 61, pg. 1. In fact, defendant presents an incomplete and misleading recitation of the Police Board's exemption which clearly provides an exemption only for those authorized officers "*while engaged in the performance of their duties*."   Although the defendant on January 6, 2021 was an officer or employee of the United States authorized by law to carry firearms, he was not engaged in the performance of his duties that day.   The motion should be denied.   Moreover, nothing in the DEA manual, on which Ibrahim appears to rely, authorized him to possess a firearm on Capitol Grounds in contravention of 40 U.S.C. § 5104(e)(1)(A)(i)'s clear prohibition.[1]

---

[1] The defendant's suggestion that the DEA Agent's Manual authorized him to possess a firearm on Capitol Grounds that day is inaccurate.   The DEA's Agents Manual does not create substantive rights that supersede federal law.  *See Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (agency provision did not satisfy the Eclectus Parrots test, as it "creates no substantive rights" and instead "provides [agency] staff with internal procedures"); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302(1979) (whether an agency pronouncement affects individual rights and obligations "is an important touchstone for distinguishing those rules that may be binding or have the force of law").

Ibrahim is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. Specifically, Ibrahim is charged with violations of 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), 40 U.S.C. § 5104(d)(2)(F) (injuries to property), and 40 U.S.C. § 5104(e)(1)(A)(i) (Firearms and Dangerous Weapons on Capitol Grounds).[2]

## FACTUAL BACKGROUND

Defendant admits and acknowledges that he was present on Capitol Grounds with a firearm on January 6, 2021. *See* ECF No. 48, pg. 4, ECF No. 48, pg. 4. He further has admitted and acknowledged that he was off duty that day. *See* ECF No. 61, pg. 2. On January 6, 2021, Ibrahim was a probationary employee at the DEA; he was removed from his position by letter dated March 1, 2021 for his poor performance during his probationary period of employment. *See* Motion to Dismiss Civil Complaint, *Ibrahim v. DEA*, 8:22-cv-00813-DFM (C.D.CA) ECF No. 30, pg. 2-3. In pleadings filed in his civil lawsuit against the DEA, Ibrahim admits and acknowledges that he was on leave from December 2020 to at least January 7, 2021. *Ibrahim v. DEA*, 8:22-cv-00813-DFM (C.D.CA) ECF No. 29, pg. 4. On December 3, 2020, Ibrahim tendered a resignation from the DEA that would take effect on January 29, 2021. *Id*.

## ARGUMENT

**I. The motion to dismiss should be denied**

"Defendant moves for dismissal of Count Three of the Indictment pursuant to Fed. R.

---

[2] On October 28, 2022, the Court dismissed for improper venue a count that charged 18 U.S.C. § 1001(a)(2) (False Statements and Representations).

2

Crim. P. 12(b)(1)." ECF No. 61, pg. 1. Specifically, defendant claims that he "was a federal law enforcement officer and employee of the United States government who was lawfully authorized to carry a firearm, at all times material, and argues that he is exempt, as a matter of law, from prosecution under 40 U.S.C. § 5104(e)(1)(A)(i)." ECF No. 61, pg. 3. There is no factual dispute concerning Ibrahim's employment status: he was technically employed by the DEA (although he was on leave and had resigned) and he was not engaged in the performance of his duties on January 6, 2021. Defendant is legally wrong in claiming that the Police Board Regulations exempt him from criminal liability. He is not exempt because he was not engaged in the performance of his duties as required by the Police Board Regulations to qualify for the exemption from the firearms prohibition found in 40 U.S.C. § 5104(e)(1)(A)(i). Ibrahim was not authorized to be on Capitol Grounds on January 6, 2021 with a firearm, and his claim fails as a matter of law.

Count Three charges the Defendant with possessing a firearm of Capitol grounds in violation of 40 U.S.C. § 5104(e)(1)(A)(i). That section provides, in its entirety, that:

> (e) Capitol Grounds and Buildings security.
>
> (1)Firearms, dangerous weapons, explosives, or incendiary devices. An individual or group of individuals—
>
> (A) except as authorized by regulations prescribed by the Capitol Police Board—
>
> (i) may not carry on or have readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm, a dangerous weapon, explosives, or an incendiary device;

40 U.S.C. § 5104(e)(1)(A)(i). Further, the Capitol Police Board Regulations provide:

> 2. Except as specified below, the provisions of section 6(a)(1)(A) of the Act, as amended, relating to the carriage of firearms shall not apply to officers or employees of the United States authorized by law to carry firearms, duly appointed federal, State of local law

3

enforcement officers authorized to cany firearms, and members of the Armed Forces, ***while engaged in the performance of their duties***, or any person holding a valid permit under the laws of the District of Columbia to carry firearms in the course of bis employment. *Provided*, That nothing contained in the provisions of section 6(a)(1)(A) of the Act shall prohibit any Member of Congress from maintaining firearms within the confines of his office or any Member of Congress or any employee or agent of any Member of Congress from transporting within the Capitol Grounds firearms unloaded and securely wrapped.

Appendix J, POLICE BOARD REGULATIONS PERTAINING TO FIREARMS EXPLOSIVES INCENDIARY DEVICES AND OTHER DANGEROUS WEAPONS (1967), attached as Exhibit A *(emphasis added)*.

### A. Ibrahim had no lawful authority to be present on Capitol Grounds with a firearm

The first step in statutory interpretation considers the statute's plain language. *Jimenez v. Quarterman*, 555 U.S. 113, 116 (2009). The plain reading of the Police Board Regulations makes clear that only officers of the United States "authorized by law to carry firearms . . . *while engaged in the performance of their duties*" are exempt from the statute's prohibition. The phrase "while engaged in the performance of their duties" modifies officers or employees of the United States authorized by law to carry firearms, as well as duly appointed federal, state, or local law-enforcement officers authorized to carry firearms. The exemption thus clearly applies to an officer who is engaged in the performance of his or her duties.

That exemption does not apply to the defendant. On January 6, 2021, although he was an officer of the United States, he was on leave, and therefore not engaged in the performance of his duties. Rather than explain or argue otherwise, the defendant simply ignores the qualifying phrase "while engaged in the performance of [his] duties," failing even to cite it in his motion.

That commonsense interpretation also finds support from relevant stakeholders. For example, the United States Capitol Police unequivocally interprets the Police Board Regulations

as not exempting off duty federal officers from criminal liability for violations of 40 U.S.C. § 5104(e)(1)(A)(i). *See* Declaration of Sgt. Stephen James, USCP Office of General Counsel, attached as Exhibit B. *See also Guedes v. BATF,* 356 F. Supp. 3d 109, 126 (D.C. Cir. 2019) (deference to agency interpretation). The declaration from the General Counsel's Office of the United States Capitol Police makes it very clear that off duty agents are not exempt, and DEA agents were not among those assigned or assisting at the Capitol on January 6, 2021. *See* Exhibit B. The Drug Enforcement Administration (DEA) has reached the same conclusion when considering whether the DEA Manual counsels a different result. *See* declaration of Rebecca A. Caceres, Deputy Chief of Operations and the DEA entity responsible for "the development, implementation, and interpretation of the DEA Agents Manual," attached as Exhibit C. Ibrahim's DEA Supervisor also concluded Ibrahim lacked authority to be on Capitol Grounds in any capacity as an agent on January 6, 2021. The declaration from the DEA's Deputy Chief of Operations makes it clear that the DEA Manual does not, and did not, authorize Ibrahim to be on Capitol Grounds with a firearm at any time. *See* Exhibit C. Their positions mirror the clear prohibition of 40 U.S.C. § 5104I(1)(A)(i).

The defendant's suggested interpretation would also lead to absurd results, which should be avoided. *See United States v. Brown*, 333 U.S. 18, 27 (1948). According to Ibrahim's construction, Capitol rioters, and Rocky Mount, Virginia Police officers T.J. Robertson and Officer Jacob Fracker would have been authorized to bring firearms with them when they went in the Capitol, and on Capitol Grounds. *United States v. Robertson and Fracker*, No. 21-cr-00034 (CRC). *See also United States v. Tam Dinh Pham*, No. 1:21-cr-00109 (TJK) (off duty Houston Police officer). So too, members of the armed services present on Capitol Grounds, and in the

5

Capitol itself, would have been justified in bringing firearms into the Capitol and on Capitol Grounds. *See United States v. Warnagiris*, 1:21-cr-00382-PLF-1 (Active duty Marine officer), *United States v. Hale-Cusanelli*, No. 21-CR-37 (TNM) (Army Sgt.), *United States v. Sahady*, 1:21-cr-00134-CJN-1 (Active duty Army Capt.).[3] The defendant's motion is meritless, and does not account for the full language of the Capitol Police Board's regulations exempting law enforcement officers on Capitol Grounds only "while engaged in the performance of their duties." The motion should be denied.

### B. Ibrahim's policy and statutory references do not support him

Ibrahim alludes to the DEA Agent's manual as well as 21 U.S.C. § 878, suggesting that they support his claim. But nothing in the DEA Agent's manual or 21 U.S.C. § 878 authorized Ibrahim to violate the provisions of § 5104(e)(1)(A)(i).[4]

The DEA Agent's manual demonstrates that Ibrahim had no authority to possess a firearm on Capitol Grounds on January 6, 2021.[5] As noted above, Ibrahim's direct supervisor at the DEA likewise confirms that Ibrahim had no authority or authorization to carry his service firearm onto Capitol grounds on January 6.

---

[3] It has been reported that at "least 13 off-duty law enforcement officials are suspected of taking part in the riot" *See* https://www.washingtonpost.com/politics/police-trump-capitol-mob/2021/01/16/160ace1e-567d-11eb-a08b-f1381ef3d207_story.html

[4] Any claim that Ibrahim may have had a mistaken belief about his authority to possess firearms on Capitol Grounds is unavailing because a mistake of law is not a defense to a violation of 40 U.S.C. § 5104(e)(1)(A)(i).

[5] As discussed in prior pleadings, the DEA Agent's manual does not encourage or permit agents to carry firearms "at all times." ECF No. 22, pg. 15-16. A review of the DEA Agent's manual also does not support his claims, but cuts strongly against him by demonstrating that he violated several provisions: § 2735.12 Responsibilities, § 2735.20 Conduct Prejudicial to the Government (participation in civil disorder), § 2735.20 (K) Unauthorized Possession of a Firearm in a Federal Facility, § 6122.11.

In any event, "courts do not apply federal policies; they apply federal statutes." *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 436 F. Supp. 3d 333, 344 (D.D.C. 2020), *vacated as moot*, No. 20-5080, 2020 U.S. App. LEXIS 32562, 2020 WL 9171125 (D.C. Cir. Oct. 14, 2020). Put another way, an agency's decision cannot prevail if it violates a federal statute, and no agency can override statutory requirements by enacting a contradictory agency rule. *See, e.g., Stinson v. United States*, 508 U.S. 36, 45 (1993). Accordingly, even if the provisions of the DEA Agent's Manual supported the defendant's claim—which they do not—those provisions would not immunize him from prosecution.

Ibrahim's gesture towards 21 U.S.C. § 878 is even less availing. Section 878 provides that "Any officer or employee of the Drug Enforcement Administration or any State, tribal, or local law enforcement officer designated by the Attorney General may— . . . carry firearms." 21 U.S.C. § 878(a)(1). The section does not, nor does it purport to, grant authority to possess firearms in violation of other laws. It certainly does not provide immunity from criminal conduct. Further, it falls under the statutory proscription of that "'old and familiar rule' that 'the specific governs the general.'" *Genus Med. Techs. LLC v. United States FDA*, 994 F.3d 631 (D.C. Cir. 2021) *citing United States v. Chase*, 135 U.S. 255, 260 (1890). Nor does Ibrahim claim that 21 U.S.C. § 878 supersedes 40 U.S.C. § 5104(e)(1)(A)(i).

WHEREFORE, the government respectfully requests that this Court deny Defendant's motion to dismiss.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              UNITED STATES ATTORNEY
                                              DC BAR NO. 481052

By: _____/s/_____
James D. Peterson
Trial Attorney
United States Department of Justice
Special Assistant United States Attorney – D.C.
VA Bar 35373
1331 F Street N.W.
6th Floor
Washington, D.C. 20530
(202) 353-0796
James.d.peterson@usdoj.gov