UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| V. ) | CASE NO: 1:21-CR-496 |
| ) | |
| **MARK IBRAHIM,** ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE, ECF NO. 95**

**I. The Term "Otherwise" Is Defined by the Word List Immediately Preceding It Because "Otherwise" Follows "Posted" and "Cordoned Off" in a Single, Unbroken Sentence Within the Same Subparagraph**

In an attempt to expand the government's fishnet, the DOJ seeks to expand the definition of a "restricted area" under 18 U.S.C. § 1752 in ECF No. 95. The DOJ explains in a long-winded brief that the policy reason for why it wants the sentence "any posted, cordoned off, or otherwise restricted area" to be defined by this court to include restrictions that are invisible to the public is to make it easier for the government to arrest and convict people. The DOJ sources its definition from a few preceding District Court cases and from piecing together favorable portions of authorities, creating a complex idea of a limitless, expansive, prohibited area that can exist as restricted within the minds of federal agents and without clear communication to the general public — to be a catch net for those who dare enter.

All the while, there is a pink elephant in the room: direct authority from both the Supreme Court in *Begay v. United States*, 553 U.S. 137, 142-143 (2008) and from the D.C. Court of Appeals in *United States v. Fischer*, 64 F.4th 329, 345 (D.C. Cir. 2023) — which specifically addressed this issue and defined "otherwise" when it is found in a single, unbroken sentence within the same subparagraph — **the exact structure of 18 U.S.C. § 1752(c)(1)**. In *Fischer*, Judge Pan opined, citing the Supreme Court's decision in *Begay*, that when a statute includes **a list of examples followed by "otherwise" in a single, unbroken sentence within the same subparagraph**, the position of "otherwise," "**inherently relates the word to the list immediately before it**." *Fischer*, 64 F.4th at 345. *See also United States v. Williams*, 553 U.S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated"). This is the legal concept of *ejusdem generis,* which the courts employ to ensure that a general word in a statute will not render the specific words that precede it meaningless. *See Yates v. United States*, 574 U.S. 528, 545 (2015).

> (c) In this section—
> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>    (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>    (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>    (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

Both the Supreme Court and the Court of Appeals require the District Court to look at the terms preceding "otherwise" in order to define it in the context of the statute.

In § 1752(c)(1), the word list immediately before "otherwise" includes only two terms: "posted" and "cordoned off." That is why the defense took the time to define those two terms in ECF No. 94.

At the time of the enactment of § 1752 in 1971, neither "posted" nor "cordoned" were defined in the Code, nor did they appear in Black's Law Dictionary (4th ed. 1968). Accordingly, a standard dictionary must be used to define the terms; as Justice Scalia explained, "[i]n the search for statutory meaning, we give nontechnical words and phrases their ordinary meaning. *See Chapman v. United States*, 500 U. S. 453, 462 (1991); *Perrin v. United States*, 444 U. S. 37, 42 (1979); *Minor v. Mechanics Bank of Alexandria*, 1 Pet. 46, 64 (1828)." *Smith v. United States*, 508 U.S. 223, 242 (1993) (Scalia, J., Dissenting). At the time of § 1752's enactment, "posted" meant to "forbid [property] to trespassers under penalty of legal prosecution by notices placed around the boundaries." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1771 (1966). "Cordon" referred to "a line or circle of persons or objects around any person or place," while "cordon off" meant "to form a protective or restrictive cordon around [a designated area]." *Id*. at 506.

Of note, in their pleadings on this issue, the defense relied on dictionaries *at the time of enactment* to define the terms. The DOJ, on the other hand, relies on *modern case law* and dictionaries to attempt to skew the definition in favor of its complex argument. While the DOJ is correct in that Congress made some amendments to § 1752 after 1971, Congress did not amend the language "any posted, cordoned off, or otherwise restricted area."

Both "posted" and "cordoned off" were defined at the time of enactment as types of visible or physical restrictions that objectively delineate or designate defined boundaries or a defined perimeter as restricted. Therefore, that is the definition that "otherwise" must take on for § 1752. This is the correct, objective formula or framework to use in order to define "otherwise"

for § 1752. *See also Smith v. United States*, 508 U.S. 223, 243 (1993) (Scalia, J., Dissenting) (discussing how to derive the meaning for the term "otherwise" from context).

While it's certainly understandable that the plain text of the statute makes the DOJ's job more difficult by requiring the government to prove that a restricted area is indeed restricted in a way that the public can objectively see and understand, that is not a problem for a District Court to solve on behalf of the DOJ. The Administration can certainly take this up with Congress at the right time, place, and in the right manner — but they have not done so.

The Defense's Motion in Limine is correct and supported by binding case law from the Supreme Court and from the Court of Appeals. The DOJ's opposition is a pretzel twist of a legal argument dipped in a policy argument that is incorrect for this juncture. The Defense motion should be granted.

**II. 18 U.S.C. § 1752(C)(1)(B) Requires Proof That a Defendant Knew That VP Pence Is or Will Be Temporarily Visiting the Restricted Area**

In multiple, thoughtful opinions, Judges Nichols, Lamberth, Cooper, and now most recently, Judge Cobb in *United States v. Samsel,* Case No. 21-CR-00537 (D.D.C. Feb. 2, 2024), have decided that the straightforward reading of 18 U.S.C. § 1752(c)(1)(B) requires the DOJ to prove that the defendant knew that the area he entered was posted, cordoned off, or otherwise restricted, and, that the defendant knew this was an area where the Vice President was or would be temporarily visiting.

Judges Cooper and Nichols drafted very detailed, eloquent, and persuasive reasoning on this issue. The Defense, therefore, relies on and rests on the reasoning in the following opinions:

1. *United States v. Groseclose*, Case No. 1:21-cr-311-CRC (D.D.C. Jan. 5, 2024).

2. *United States v. Elizalde*, Case No. 1: 23-cr-00170-CJN, ECF No. 39 (D.D.C. Dec. 1, 2023).

3. *United States v. Bingert*, et. al., Case No. 1:21-cr-00091-RCL, ECF No. 163 (D.D.C. May 18, 2023).

4. *United States v. Samsel,* Case No. 21-CR-00537-JMC (D.D.C. Feb. 2, 2024) (transcript attached).

These judges have considered the arguments that the DOJ made in this case and have rejected them as unpersuasive. The Defense incorporates all arguments and analyses made by the judges in these cases.

**III. Defining the Terms "Use or Carry," "During and in Relation to" the Offense**

All of the terms in 18 U.S.C. § 1752(b)(1)(A) that the Defense asks to be defined pretrial have been defined by the Supreme Court. The defense seeks to enforce Supreme Court precedent, binding authority.

A) "Use *or* Carry"

The Supreme Court defines "use" of a firearm as connoting more than mere possession of a firearm, and requires some active employment of the firearm by the person committing the offense. *Bailey v. United States*, 516 U.S. 137, 143-150 (1995) (explaining that "use" is not synonymous with "possession").

The Supreme Court interpreted the statutory term "carry" to mean the firearm must be on the person or accompanying the person. *Muscarello v. United States*, 524 U.S. 125, 126-27

(1998) (determining the "generally accepted contemporary meaning" of the word "carry" to include the carrying of a firearm in a vehicle).

Either use *or* carry will satisfy 18 U.S.C. § 1752(b)(1)(A).

B) "During *and* in Relation to"

The Supreme Court interpreted the "during and in relation to" element to require that a used or carried weapon furthers the purpose or effect of the crime — that the presence or involvement of the weapon be not the result of a coincidence. *Smith v. United States*, 508 U.S. 223, 238 (1993). This is a type of "limiting phrase" that serves to "prevent misuse of the statute to penalize those whose conduct does not create the risks of harm at which the statute aims." *Muscarello v. United States*, 524 U.S. 125, 139 (1998).

> The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the [charged] crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under [the charged code section] for committing a [charged] offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the [alleged] offense.

*Smith v. United States*, 508 U.S. 223, 238 (1993) (internal and subsequent citations omitted). (*Smith* was clarified in *Watson v. United States*, 128 S. Ct. 579 (2007), where the definition of the term "use" was more heavily restricted.)

Under 18 U.S.C. § 1752(b)(1)(A), the DOJ must prove the term in full, in the conjunctive — "during *and* in relation to the offense." The language in § 1752(b)(1)(A) is identical to the language that the Supreme Court has already reviewed and interpreted in *Smith, Muscarello,*

*Bailey,* and progeny. This language is a limiting phrase that serves to prevent DOJ's abuse of the statute. The abuse issue is directly pertinent to Mr. Ibrahim's case— as the DOJ filed a shocking brief in ECF No. 93, seeking this Court's permission to abuse their power under the guise of enforcing § 1752.

C) "During and in Relation to the Offense, Uses or Carries" As Used in § 1752

The crime that is charged in the Indictment is one of trespassing in the "restricted area" of the Grounds of the Capitol. Accordingly, "during *and* in relation to the offense" in the context of § 1752, as charged in Mr. Ibrahim's Indictment, means that the alleged weapon was used or carried with the purpose or effect of committing a trespass offense on Capitol Grounds. In order to convict the defendant, the use or carry of the weapon must be proven as directly related to facilitating the crime of trespass on Capitol Grounds.

Mere possession of the firearm is insufficient as a matter of law for a conviction.

The DOJ, therefore, must prove that the Defendant actively employed a weapon as a means of committing the charged crime of trespass and that the presence of the weapon was not merely coincidental or entirely unrelated to the alleged trespass.

And, the Defendant, therefore, must be able to argue that the weapon was not used or carried during and in relation to the offense. The Defendant, in order to present a complete defense per his constitutional right to do so, must have the opportunity to both argue and present evidence that the weapon was used or carried for purposes unrelated to the commission of the offense — that it was used or carried for reasons independent of the alleged crime of trespass.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on February 13, 2024, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.